# THE STATE v. ROBERT PIPKIN, Appellant.

### Division Two, June 8, 1909.

1. **CARNAL KNOWLEDGE: Unmarried: Proof.** Defendant was charged with carnal knowledge of an unmarried female named Ellen Bailey and one witness, who had resided for years within a half mile of her residence, in answer to the question, "Ella Bailey is not married, is she?" said, "I reckon not, sir; if she is, I never heard of it." It further appears that prosecutrix was a member of her father's family, whose name was Bailey, living with him and bearing the name of Ellen Bailey; that she received from defendant, as well as others, such attentions as would attend a courtship of a young lady who is not married; that she was fifteen years old; that defendant frequently called at her home and accompanied her to public places; that she had never had sexual intercourse with any one except defendant; and that during the progress of the trial she was frequently referred to, by counsel and witnesses, as "Miss Bailey," "Bailey's daughter," "the Bailey girl," "the little girl." *Held*, there being no testimony to the contrary, this evidence was sufficient to warrant the jury in finding that Ellen Bailey was an unmarried female.

2. ———: **Argument of Attorney: On Testimony Excluded: Father of Child.** The witness had testified that no other man except defendant had ever had sexual intercourse with her, and later the court excluded her testimony that the defendant was "the father of her child." *Held*, that it was not reversible error for the prosecuting attorney, in his closing argument to the jury, to say that "Ellen Bailey, the prosecuting witness, testified before you that the defendant is the author of her ruin and the father of her child;" for, while her specific testimony that he was the father of her child was excluded, yet it inevitably follows from her other testimony, if true, that he was the father of her child.

3. ———: **Conflict in Evidence: Reversal.** Where there is substantial testimony establishing the guilt of defendant and other testimony conflicting with it, it is the province of the jury to settle the conflict, and the Supreme Court cannot say the evidence was insufficient to support a verdict of guilty without usurping the functions of the jury.

4. ———: ———: ———: **Majority of Witnesses.** It does not follow, because only one witness testified to the essential facts necessary to constitute the offense, and four or five others

testified to a state of facts tending to prove that no offense was committed, that the jury were bound to believe the testimony of the majority. In some instances the positive testimony of one witness is of greater value than the negative testimony of many others.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Lamar & Lamar* for appellant.

(1) The State failed to show that prosecutrix was unmarried. This is fatal. This is one of the essential elements of this offense, made so by statute, without proof of which a conviction cannot stand. State v. Wheeler, 108 Mo. 663; 25 Am and Eng. Ency. Law, 235; Hughes, Crim. Law, sec. 2123; West v. State, 1 Wis. 209; 2 McClain's Crim. Law, sec. 1113.    (2)    The court committed error in refusing to rebuke special counsel for the State for the language used by him in his closing argument to the jury. A prosecuting officer certainly should not be permitted, if evidence has been excluded by the court on objection of the defendant, to state such facts to the jury in the closing argument, when there is no opportunity to reply to or dispute that such facts are in evidence, and when objection is made, repeat the statement and give it additional emphasis. This alone ought to reverse the case.    12 Cyc. 574; State v. Woolard, 111 Mo. 255; State v. Ferguson, 152 Mo. 99; State v. Rose, 178 Mo. 37; State v. Lee, 66 Mo. 165; State v. Ulrich, 110 Mo. 350; Evans v. Town of Trenton, 112 Mo. 390; Stetzler v. Railroad, 210 Mo. 706; State v. Shipley, 174 Mo. 512.    (3) The evidence is insufficient to support the verdict. Counsel are not unmindful of the fact that appellate courts are slow to reverse a conviction on this ground; but in this connection we call attention to the testimony in this case.

The witnesses for the defendant were disinterested, of good standing, unimpeachable and uncontradicted save by the prosecutrix alone; and it is apparent from reading their testimony that either they or prosecutrix told a wilful untruth. The perusal of this record cannot fail to bring the conviction that these witnesses are telling the truth. In addition the above witnesses impeached Ellen Bailey's reputation and say that her reputation in that neighborhood for chastity has been bad since she was a child, and most of them, those who were qualified to speak thereof, stated that the reputation of defendant Pipkin is good. "The doctrine of no evidence to support the verdict does not mean that literally no evidence whatever was introduced by the prevailing party, but it means that juridically considered the evidence did not tend to support the verdict which was rendered thereon. The doctrine that a mere scintilla of evidence is enough to prevent an appellate court from disturbing a verdict has been disavowed in the later cases of both the State and Federal courts." Finkelnburg's Appellate Practice, p. 159; State v. Mansfield, 41 Mo. 471; State v. Burgdorf, 23 Mo. 65; State v. Jaeger, 66 Mo. 173; State v. Castor, 93 Mo. 253; State v. Prendible, 165 Mo. 353; State v. Lockhart, 188 Mo. 427; State v. Crabtree, 170 Mo. 659; State v. Francis, 199 Mo. 693; State v. Gordon, 199 Mo. 596; State v. Huff, 161 Mo. 459.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) In his motion for a new trial, defendant complains that there was no evidence that prosecutrix was at the time of the alleged offense an unmarried female. An examination of the record readily discloses ample testimony upon which the jury were warranted in drawing the conclusion that Ellen Bailey was an unmarried female, and its weight was for their con-

sideration. On this element the evidence might have been clearer and more positive, yet, on the whole, there was substantial evidence from which the jury was warranted in its conclusion and its findings of guilty, and the weight of the evidence was for the jury. State v. Reed, 153 Mo. 453; Ferguson v. State, 71 Miss. 812; State v. Matthews, 202 Mo. 143; State v. McCullough, 171 Mo. 57; State v. Tetrich, 199 Mo. 100; State v. Williams, 199 Mo. 137; State v. Warner, 74 Mo. 85; Champaigne v. Hamey, 189 Mo. 729. (2) Defendant also complains that State's counsel in his closing argument was permitted to state in an impassioned voice "that the prosecuting witness, Ella Bailey, had testified that the defendant Pipkin is the father of her child and the author of her ruin," when he says no such testimony had been given in evidence. The prosecuting witness had testified that until she fell a victim to defendant's lust, and he had robbed her of the jewel of her virginal purity, she had had intercourse with no one; that at no time since had she been guilty of improper relations with any person except defendant, and that in May, 1907, she had given birth to a child. His statement, however impassioned may have been the voice, and however loathing the words to defendant, was not error, but lamentably true and fully warranted by the evidence. To declare this statement improper would be to announce the rule that counsel for the State can no longer discuss criminating facts, draw reasonable inferences therefrom or arrive at logical conclusions. State v. Sublett, 191 Mo. 174; State v. Palmberg, 199 Mo. 253; State v. Miles, 199 Mo. 552; State v. Grubb, 201 Mo. 613.

FOX, J.—The defendant has brought this case to this court by appeal from a judgment of the circuit court of Texas county, convicting him of carnally knowing an unmarried female of previously chaste

character, between the ages of fourteen and eighteen years. The information substantially charges that Robert Pipkin was over the age of sixteen years, and that he unlawfully and feloniously had carnal knowledge of one Sarah Ellen Bailey, an unmarried female, of previously chaste character, between the ages of fourteen and sixteen years of age, that is to say, of the age of fifteen years. To this information defendant entered his plea of not guilty and the trial proceeded.

The testimony developed at the trial upon the part of the State tended to prove that Ellen Bailey lived with her father on Elk Creek in Texas county, Missouri; that prosecutrix and defendant had known each other from childhood, and in May, 1906, defendant began calling at her home and accompanying her to prayer-meeting. On the second Sunday evening in June, 1906, defendant escorted prosecutrix to the Box School House, where prayer-meeting was being conducted, and after the services closed they started to the home of prosecutrix, accompanied by a number of other persons. In returning to their home it was necessary to pass through a hollow, up a hill and along a place where there is a bend or turn in the road. When the other persons, who were in front of prosecutrix and defendant, reached this bend in the road, and as they were passing same, defendant and prosecutrix stopped in the hollow and had sexual intercourse. Defendant continued his attentions to prosecutrix, and in July following their illicit act was repeated. Counsel objected to evidence of further acts and was sustained. On the 7th day of May, 1907, prosecutrix gave birth to a child. At the time of those improper relations prosecutrix was fifteen years old and defendant was over the age of sixteen years. Prosecutrix testified that no one except defendant had ever had intercourse with her, and that on occasions other than the one when her deflowering occurred, de-

fendant had accompanied her along the same road, and when practically the same crowd were with them. Emmet Tate, Dr. C. W. Harmond, J. W. Dickerson, E. W. Seers, John Tate, George Robertson and M. Morgan, all testified that they were near neighbors and had been acquainted with prosecutrix for several years, and that her general reputation for chastity was good prior to this trouble. There was also testimony tending to show that Ellen Bailey was an unmarried female at the time it is alleged the offense was committed.

On the part of the defendant Mrs. Ollie Morris, Albert Jackson, Clint Owens, Mrs. Dora Owens and Mrs. Nannie Morris all testified that they attended prayer-meeting at the Box School House on the first Sunday evening in June, 1906, and that on this occasion and on the return trip home they were in a crowd with defendant and prosecutrix when passing along the road where prosecutrix testified she and defendant first had intercourse, and that on this occasion defendant accompanied the prosecutrix; that some of the party were in front and some in the rear of defendant and prosecutrix, all being in close proximity to each other, and that defendant and prosecutrix did not stop in the hollow and that nothing of the nature described by prosecutrix took place on that occasion; and that this was the only time when they passed this place in company with defendant and prosecutrix. They also testified, as did other witnesses, that the reputation of the prosecutrix for virtue and chastity was bad, while defendant's reputation for honesty, truthfulness and virtue was good. These witnesses all stated the respective positions of the various parties with reference to each other on that occasion of two years past, yet on cross-examination they were unable to state who else was at the prayer-meeting, who conducted the same or where they were at other times; they also testified that nothing happened on the oc-

casion referred to to especially attract their attention thereto, or to cause their memory to be so charged with reference thereto. Lula Bryant testified that on the second Sunday in June, 1906, she met defendant at Sunday school and that she and he went from there to the home of her grandfather, where defendant remained with her until about 8 p. m., and that defendant is still showing her marked attentions. Defendant denied having ever had intercourse with prosecutrix, but admitted accompanying her to the schoolhouse and back home on the first Sunday evening in June, 1906, but denied being with her on the second Sunday in June, as testified to by her.

At the close of the evidence the court fully instructed the jury upon every subject connected with the commission of the offense to which the testimony was applicable. The cause being submitted to the jury they returned their verdict finding the defendant guilty as charged in the information, and assessed his punishment at three months' imprisonment in the county jail. Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. Judgment was entered in accordance with the verdict, and from this judgment the defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

The assignments of error as disclosed by the record, which are relied upon by the appellant as grounds for the reversal of this judgment, may thus be briefly stated:

First. That the State failed to prove that the prosecutrix, Ellen Bailey, was an unmarried woman.

Second. That the court erred in refusing to rebuke the prosecuting attorney for the State for improper language used by him in the closing argument

by making statements to the jury concerning facts which were not in evidence.

Third. That the evidence developed upon the trial of this cause was insufficient to support the verdict and finding of the jury and that the verdict as returned by the jury was manifestly the result of passion and prejudice.

## I.

It is insisted by learned counsel for appellant that there was no evidence that prosecutrix was at the time of the alleged offense an unmarried female. It is sufficient to say as to this insistence that we have carefully analyzed the disclosures of the record as applicable to this subject, and while it may be said that the testimony may have been made more satisfactory, yet we are unable to agree with learned counsel that there was not ample evidence to submit that question to the jury. Solomon Blessing, a witness for the defendant, who for a number of years resided within one-half mile of prosecutrix and had known her well during that time, testifying upon this subject, said: "Q. Ella Bailey is not married, is she? A. I reckon not, sir; if she is, I never heard it." It further appears that the prosecutrix was a member of her father's household and living with him, bearing the name of Ellen Bailey. It also appears from other disclosures of the record that Ellen Bailey received from defendant, as well as others, such attentions as would attend a courtship of a young lady who is not married. The prosecutrix testified that the defendant frequently called at her home and accompanied her to public places. It also appears from the disclosures of the record that the prosecutrix testified that she had never had intercourse with any one except the defendant. This, at least, is a strong circumstance tending to show that she was unmarried. It also appears that her father's name was Bailey, and that her name was

Bailey. During the progress of the trial she was frequently referred to by counsel as well as the witnesses as "Miss Bailey," "Bailey's daughter," "the Bailey girl," and "the little girl." Witness Jackson referred to her as "Miss Bailey."

In State v. Buck, 43 Mo. App. 1. c. 447, in discussing the elements of the offense in that case, the court used this language: "The information would undoubtedly have been clearer and better, if it had charged in direct language that Miss Linnie Evans was a single woman; but the employment of the word 'Miss,' which is commonly used to designate a woman who has never been married, does state that fact at least inferentially."

In the case of State v. Reed, 153 Mo. 451, it was insisted, as in the case at bar, that there was no sufficient proof that the female who was charged to have been seduced, was an unmarried woman. Judge BURGESS, in speaking for this court, ruled, and correctly so, that it was essential in that case, in order to warrant a conviction, to prove that the female charged to have been seduced was unmarried; however, in further discussing the proposition he announced the rule that it was not absolutely necessary that such fact be shown by direct and positive evidence, but like any other fact it may be shown by facts and circumstances detailed in evidence, and in that case there was no positive or direct proof that the female was unmarried, yet it was held that the facts and circumstances disclosed by the record were sufficient to warrant the jury in reaching the conclusion that she was an unmarried female. So we say in this case, taking the entire disclosures of the record, and in the absence of any testimony to the contrary, the facts and circumstances as shown by the evidence in this cause were entirely sufficient to warrant the jury in finding that Ellen Bailey was at the time of the alleged commission of the offense an unmarried female.

## II.

It is next insisted that the court erred in refusing to rebuke William L. Hiett, the acting prosecuting attorney for the State, for using improper language in his closing argument to the jury. The prosecuting attorney, in his closing argument, employed this language: "Ellen Bailey, the prosecuting witness, testified before you that the defendant is the author of her ruin and the father of her child." To these remarks the defendant objected, and duly preserved his exceptions to the making of such remarks. The court did not undertake to rebuke the prosecuting attorney. Learned counsel for appellant insists that this constitutes such error as would authorize the reversal of this judgment. In treating of this insistence it is essential that we determine what Ellen Bailey did testify to concerning this subject. Without objection upon the part of the defendant, she testified that she had never had intercourse with any other man except the defendant Robert Pipkin. This testimony was not excluded, but the additional question was asked Ellen Bailey as to whether or not Robert Pipkin was the father of that child, and she answered, "Yes, sir." This question and answer were objected to by the defendant, and the objection was sustained, and the question and answer excluded. Now, while it is true that the prosecuting attorney should not have stated to the jury in terms that Ellen Bailey testified that the defendant was the father of her child, for the reason that that testimony had been excluded by the court, but as to the statement by the prosecuting attorney that "the defendant is the author of her ruin," her testimony fully warranted that inference; and, as to the statement that the defendant was the father of her child, while she was not permitted to state that he was the father of her child, her testimony in which she says no other man ever had intercourse with her except

the defendant Robert Pipkin, followed by the evidence
that subsequently she gave birth to a child, is in effect
stating that he was the father of her child, and had
the prosecuting attorney directed his argument along
that line, giving the testimony which was admitted
without objection, and showing that there is no escape
from the conclusion, if that was true, that the defend-
ant was the father of her child and the author of her
ruin, manifestly it would have been a legitimate and
proper argument; hence it follows that the only com-
plaint against the argument of the prosecuting attor-
ney, and to which any objection could be urged was
the fact that he stated that Ellen Bailey had testified
that the defendant was the father of her child, which
in so many words she did not testify to, but in effect
did testify to that fact. Now, while we fully indorse
the repeated admonitions by this court to prosecuting
officers of the necessity of confining their arguments
to the record made in the trial of the cause, yet after
a most careful and thorough consideration of the com-
plaint made in this case that the prosecuting attorney
improperly stated to the jury that Ellen Bailey had
in terms testified that the defendant was the father of
her child, we have reached the conclusion that it was
not such error as would warrant this court in rever-
sing this judgment. As before indicated in this opin-
ion, while the court did exclude the testimony of Ellen
Bailey in the terms used in answer to the question
that the defendant was the father of her child, yet
there still remains the testimony of Ellen Bailey,
which was not excluded, which in effect, if believed
by the jury, did show that the defendant was
the father of her child. If her testimony was
true that no one else had had sexual intercourse
with her but the defendant, and subsequent to
such intercourse this child was born, there is no escape
from the conclusion that the defendant must have been
the father of that child. Again, it may be said that

this was a trial before the jury, and they were fully aware as to what testimony was admitted and the testimony that was excluded. Considering the disclosures of the record altogether, we repeat that the remarks of the prosecuting attorney in his closing argument do not constitute such error as would authorize this court to reverse the judgment.

## III.

This brings us to the consideration of the final insistence of learned counsel for appellant, that the evidence developed upon the trial is insufficient to support the verdict of the jury. In the consideration of this contention we have read in detail all of the testimony disclosed by the record, and find that this case is not unlike numerous other cases; that there is simply a conflict of testimony. The prosecuting witness testified clearly and positively to a state of facts, which, if the jury believed, fully warranted the conclusion reached by them. The defendant introduced numerous witnesses who testified that they were along with the prosecuting witness and the defendant on the occasion supposed to be the one when the offense was committed. That they had opportunities for observing the defendant and prosecuting witness and that they failed to see the commission of any acts between the defendant and the prosecuting witness which would constitute the offense charged. In other words, on the occasion they referred to they did not see the commission of this offense, yet on the other hand the prosecuting witness says that it was committed. It is somewhat significant that upon cross-examination of the witnesses for the defendant they were unable to state the names of any other persons that attended prayer-meeting, nor were they able to state as to where they were at various other times. They also stated that nothing happened on the occasion supposed to be the time when this offense was

committed to especially attract their attention thereto,
or to cause their memories to be so charged with refer-
ence to the same.   The defendant, while he admitted
that he accompanied the prosecuting witness to the
schoolhouse and back home on the first Sunday eve-
ning in June, 1906, denied being with her on the sec-
ond Sunday in June, as testified to by her, and also
denied that he had ever had intercourse with the prose-
cutrix.   There were other witnesses who testified that
up to the time of the commission of this alleged offense
they had never heard anything against the reputation
of the prosecuting witness.   This case, like numerous
others, simply presents a conflict of testimony, and
it is exclusively the province of the jury, where there
is substantial testimony establishing the commission
of the offense and other testimony conflicting with
it, to settle in their deliberations such conflict.   Should
this court hold that the testimony as disclosed by the
record was insufficient to support the verdict, it would
in effect usurp the province of the jury and simply
say that the jury should not have believed the testi-
mony of the prosecuting witness, but should have been
controlled by the testimony of the witnesses intro-
duced by the defendant which tended to show that
there was no offense committed.   This we are unwill-
ing to do.   This cause was tried by the court and jury
in the county where the offense was alleged to have
been committed.   The court and jury had before them
the witnesses, with far better opportunities of observ-
ing the witnesses while testifying, determining their
credibility and the weight to be attached to their tes-
timony than we have.   It does not follow that, because
only one witness testified to the essential facts neces-
sary to constitute the offense and four or five others
testified to a state of facts tending to prove that no
offense was committed, the jury were bound to believe

the testimony of the majority of the witnesses, but it was their province to observe them and weigh their testimony. In many instances the testimony of one witness is of far greater value than the testimony of a half dozen others.

Our attention is directed by counsel to numerous cases in which the court held that the testimony was insufficient. An examination of those cases will demonstrate that they are unlike the case at bar. In those cases the witnesses were so thoroughly impeached by contradictory statements made outside of court that this court was convinced that the testimony of the witnesses which had been so completely impeached ought not to be made the basis of a judgment of conviction. That is not this case. The prosecuting witness simply details her testimony, testifying that certain acts were committed by the defendant on certain occasions, and as to the particular date, the prosecuting witness might have been mistaken as to that, but that would not invalidate her entire testimony. On the other hand the witnesses for the defendant testified to a certain state of facts, the tendency of which establishes the innocence of the defendant. As has been repeatedly ruled by this court, the appellate court should not usurp the province of the jury and undertake to retry a case upon the evidence as disclosed by the record. It is the province of the appellate court to review the record, and if there is substantial testimony which will support the verdict it should not be disturbed on the ground that the weight of testimony seems to be in conflict with the conclusion as reached by the jury. In this case, as before stated, the jury had the witnesses before them, and doubtless applied all the tests of determining their credibility and weight to be attached to their testimony, and they returned a verdict finding the defendant guilty. The learned judge presiding at the trial approved that verdict, and we see no escape from the conclusion, if the former

rulings of this court are to be longer followed, that such verdict should not be disturbed upon the ground that there is a conflict in the testimony and that more witnesses testified for the defendant than did for the State.

We have indicated our views upon the legal propositions disclosed by the record, and finding no reversible error the judgment of the trial court should be affirmed, and it is so ordered.

All concur.