THE STATE OF NORTH DAKOTA, Plaintiff and Respondent, v. MELVIN JOHNSON, Defendant and Appellant.

(227 N. W. 560.)

Opinion filed October 24, 1929.   Rehearing denied December 10, 1929.

*DePuy, Greenberg & DePuy,* for appellant.

*James Morris,* Attorney General, and *T. I. Dahl,* State's Attorney, for respondent.

Burke, Ch. J.   On the 7th day of December, 1928, the defendant, Melvin Johnson, was convicted of the crime of rape in the second de-

gree; thereafter, and on the 16th day of March, 1929, a motion for a new trial was denied, and from an order overruling the motion and from the judgment entered upon the verdict of the jury the defendant appeals.

It is the contention of the appellant, that the court erred in the admission of certain testimony under objection at the trial, as follows: Ques. "And you asked her who was to blame for it?" Ques. "And did she tell you?" These questions were asked of the witness, Anna Grendahl, and when objection was made the court instructed the witness to answer by yes, or no. She answered, "yes" to each question. When the witness was asked to tell who the prosecuting witness said was to blame, the court sustained an objection. It is well settled, that the fact, that the complaining witness made complaint after the commission of the offense may be admitted evidence, that is the fact, that complaint was made may be shown, but the details cannot be given and as the details were excluded in this case there was no error. Besides there could be no prejudice, for the reason, that it was preliminary to the testimony of this same witness, Anna Grendahl, who immediately following this testimony further testified without objection to a conversation she had with the defendant, Melvin Johnson, as follows: "Did you have any conversation with Melvin Johnson as to him being the cause of the condition?" (Bella Grendahl's condition.) Ans. "I went up there one Sunday and talked to him." Ques. "Did you at that time accuse him of being the cause of her condition?" Ans. "Well, I told him that she figured that way." Ques. "And what did he say?" Ans. "He said you couldn't exactly blame him for it, because she had been out with so many others." This testimony is corroborated by the defendant, as follows: "Did you make any statements to Anna Grendahl that you couldn't be blamed, because there were others that had been out with her?" Ans. "Yes sir." Ques. "Did you tell her that others had been out with her that were to blame for her condition?" Ans. "I told her she had been out with others, too, I supposed." After the admission of this competent evidence, certainly the evidence objected to was harmless.

Second, the court erred in sustaining the state's objection to the introduction of exhibit "A." Exhibit "A" is a letter written by the complaining witness, Bella Grendahl, to the defendant, Melvin John-

son. This letter should have been admitted in evidence as it shows the friendly relations of the parties, and reads as follows:

Park River, N. D.
October 25, 1927.

Dear Melvin:

Thought I would write a few lines as I hear you are still around here. Heard Dad said, you was here Sunday evening after I left. I am sorry I was not home. I hear there is a Halloween dance at Edinburgh on Friday, suppose you will be going. I would like to go, but I have no way yet of getting there. Suppose you wouldn't come down and get me. That is, if you intend to go. If not please let me know some way. I aint been to a dance since that night in P. R. and I don't care so much either. I guess I will quit my scribbling as it is time to get to work.

As ever,
Bell Grendahl.

There is nothing in this letter that could possibly help the defendant, except, the date October 25, 1927, and the statement "I ain't been to a dance since that night in P. R.," and both the date and the statement are in the record, in the cross-examination of the witness Bell Grendahl, in which she testified the date of October 25, 1927, was the correct date, and that the letter contained the statement, "I ain't been to a dance since that night in Park River." The purpose of offering the letter was, no doubt, to contradict the testimony of the witness that she wrote the letter on the 15th of October. The defendant testified that he received the letter on the 26th of October. In his cross-examination he says, in reference to the letter, "She wrote and wanted me to take her to a dance in Edinburgh on the 28th." He is asked the question, "You heard Mr. De Puy reading from the letter in question, in which Bell said, she had not been to a dance since the Park River dance?" And while he answered, "no sir," that statement from the letter is again before the jury without objection. He further states, that the main thing that he remembers is the date of the letter. So that all that part of the letter that might in any way help the defendant was in the record without objection, and was no doubt

argued to the jury as contradicting the prosecuting witness's testimony that she wrote the letter on the 15th of October.

Third, the court erred in reading the information to the jury. This was not error, as the court specifically instructed the jury, "That the information was not evidence, but was simply the written charge of the state upon which the case is brought to trial· in this court, for the evidence, the facts, you must get them from the witnesses upon the witness stand, and from the exhibits offered and received in evidence." .The definitions of the technical terms in the information .as given to the jury by the court were correct in so far as they are applicable to this case.

Fourth, the most serious question in the case, is, whether there is sufficient evidence that the prosecutrix was not the wife of the defendant? Under the statutes of this state, "Rape can only be accomplished with a female not the wife of the perpetrator." It is a part of the statutory definition, and must be alleged in the information and proven at the trial. It is alleged in the information in this case, and the jury was instructed by the trial judge, that it was one of the material allegations of the complaint which must be proven to the satisfaction of the jury beyond a reasonable doubt; and the question, is, whether the proof is sufficient to sustain the verdict of the jury.

In People v. Gonzales, 6 Cal. App. 255, 91 Pac. 1013, it was held, that the indirect evidence of nonmarriage in that case, was insufficient, although there was evidence that the female was only eleven years of age.

In People v. Jailles, 146 Cal. 301, 79 Pac. 965, the trial court omitted to state to the jury on the first count, that it was necessary to show that the prosecutrix was not the wife of the defendant. The court said, "the omission was not prejudicial. There was not the slightest pretense that the prosecutrix was the wife of the defendant. The defendant himself testified that he did not know her name, that he had no acquaintance with her, and that he had never seen her before that night. Under the circumstances it could not be held to be prejudicial error for the court to assume in its instructions that she was not the defendant's wife."

In the case of Smith v. State, 44 Tex. Crim. Rep. 137, 100 Am. St. Rep. 849, 68 S. W. 995, the Texas court held, that it must be shown

that the prosecutrix was not the wife of the defendant by direct evidence. But the same court in the case of Munger v. State, 57 Tex. Crim. Rep. 384, 122 S. W. 874, said: "A reversal is asked because the evidence fails to show that the alleged injured female was not the wife of the defendant. Singular to say, but the statement of facts does not show positively, or, rather by positive statement, that she was not the wife of the appellant. However, the circumstances show that she was not his wife." In this case it was held, that the indirect proof was sufficient although it was not offered for the purpose of proving that there was no marital relation.

In a later case, Gent v. State, 57 Tex. Crim. Rep. 414, 123 S. W. 594, the Texas court said: "In a prosecution for rape, evidence that the prosecutrix was known by her own name, that she lived with her parents, that she was about fifteen years of age, that she went with the defendant and his wife to Kaufman and that the accused tried to induce her to leave the state with him as his wife, was sufficient to show that the prosecutrix was not accused's wife."

In the case of State v. May, 59 Wash. 414, 109 Pac. 1026, Ann. Cas. 1912B, 113, the court said: "It was apparently assumed by counsel throughout the trial of the case that the marriage relation did not exist, and no direct testimony was offered upon that question, but it was shown that the child was under the age of fourteen years, and that she was living at home with her father and mother and bearing her maiden name, in fact, she was a mere school girl, and there is nothing in the record to indicate that she was married. All the circumstances indicate beyond question that she was unmarried, and certainly was not the wife of Arndt. While it is the rule that want of the marriage relation is an essential ingredient of the crime and must be alleged and proved, still it is not absolutely necessary to prove that fact by direct and positive testimony; but, like any other fact it may be proved by facts and circumstances from which the conclusion may be drawn."

State v. Reed, 153 Mo. 451, 55 S. W. 74; Lewis v. People, 37 Mich. 518, 2 Am. Crim. Rep. 75; Brenton v. Territory, 15 Okla. 6, 78 Pac. 83, 6 Ann. Cas. 769; State v. Pipkin, 221 Mo. 453, 120 S. W. 17. In the latter case the court said, one witness was asked, "Ellen Bailey is not married is she?" Ans. "I reckon not, sir; if she is, I never heard of it." It further appears, that she lived as a member of her father's

household bearing the name of Ellen Bailey. That the defendant as well as others was received by her with such intentions as would attend a courtship of a young lady who is not married, that the defendant called at her home frequently; that her father's name was Bailey; that during the progress of the trial she was frequently referred to by counsel, as well as the witnesses, as Miss Bailey, the Bailey girl.

In the case of State v. Buck, 43 Mo. App. 447, the court said: "The information would have undoubtedly been clearer if it alleged in direct language that Miss Linnie Evans was a single woman; but the employment of the word, 'Miss,' does state that fact at least inferentially."

"In the case of State v. Reed, 153 Mo. 451, 55 S. W. 74, it was insisted as in the case at bar, that there was no sufficient proof that the female was an unmarried woman. In discussing the proposition the court announced the rule, that it was not absolutely necessary that such facts be shown by direct, and positive evidence, but like any other fact it may be shown by facts and circumstances detailed in the evidence; and in that case there was no positive or direct proof that the female was unmarried, yet it was held, that the facts and circumstances disclosed by the record were sufficient to warrant the jury in reaching the conclusion that she was an unmarried female. So we say in this case taking the entire disclosure of the record and in the absence of any testimony to the contrary, the facts and circumstances as shown by the evidence in this cause were entirely sufficient to warrant the jury in finding that Ellen Bailey was at the time of the alleged commission of the offense an unmarried female." The fact of nonmarriage may be established by indirect testimony. Hanks v. State, 88 Neb. 464, 129 N. W. 1011.

In the case at bar, the record shows, that the prosecuting witness lived since she was five months old with Halvor Grendahl, and went by the name of Bella Grendahl.

According to the testimony of Bella Grendahl, she first met the defendant in 1926, but did not meet him again until September 30, 1927, then she met him at a carnival at Park River. At this carnival they arranged to go, and did go to a dance at Garder. Later she went to Garder with her sister, to another dance, and the defendant brought her home. Later she states, that they went to St. Peter, a church,

but did not attend the service. In all, she claims that they were out together four different times.

The defendant lives at the home farm, and he and his brother farm it. He admits that he was out with the prosecutrix three times, but denies that he was with her on the trip to St. Peter.

On the occasion when the defendant went to Grendahl's place on the 11th of June 1928, he is asked by his own counsel about the conversation that was had at the Grendahl place. Ques. "What was said at that time?" Ans. "They wanted me to marry her on account of her trouble." Ques. "Do you remember the time you were arrested?" Ans. "No I don't, just remember the date." Ques. "It was after you had been and had this talk?" Ans. "Yes sir." Ques. "After they asked me to marry her." Ans. "Yes sir." We now offer in evidence exhibit "C" and "D." Exhibit "C" is the complaint upon which the warrant was issued for the arrest of the defendant, and exhibit "D" is the warrant of arrest. The purpose, of course, of this testimony was to show that the Grendahls first asked the defendant to marry the complaining witness, and when he would not, they had him arrested, so it prepared from the record that the defense proved that the defendant and the prosecuting witness were not married, by showing that the prosecutrix gave the defendant an opportunity to marry her, and when he would not she had him arrested.

The California decision relied upon by appellant does not hold that it must be proven by direct evidence; it simply holds that the indirect evidence in that case was not sufficient, and while the case of Smith v. State, 44 Tex. Crim. Rep. 137, 100 Am. St. Rep. 849, 68 S. W. 995, apparently holds that it must be proven by direct testimony, the later case of Munger v. State, 57 Tex. Crim. Rep. 384, 122 S. W. 874, and Gent v. State, 57 Tex. Crim. Rep. 414, 123 S. W. 594, hold, that it may be proven by indirect testimony.

The evidence in this case, though indirect, was sufficient to submit the question to the jury.

· The main part of the appellant's brief and his very able argument in this court, are in support of his claim that the evidence does not justify the verdict. We have read the testimony very carefully, and there being a direct conflict in the evidence between the state and the defendant, the question of the guilt or innocence of the defendant was for the jury.

In this state the statute does not require that the complaining witness be corroborated, but a defendant may be convicted upon the unsupported testimony of the complaining witness.

As stated in the case of State v. Pipkin, 221 Mo. 453, 120 S. W. 17, it does not follow because only one witness testified to the offense, and four or five others testified to a state of facts tending to prove no offense was committed, that the jury was bound to believe the testimony of the majority of the witnesses.

The order overruling the motion for a new trial and the judgment of the trial court must be, and are affirmed.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.