**The STATE of North Dakota,
Plaintiff and Appellant,**

v.

**David OASHEIM, Defendant
and Appellee.**

**Cr. No. 978.**

Supreme Court of North Dakota.

July 11, 1984.

Nicholas B. Hall, State's Atty., Grafton, for plaintiff and appellant.

Neil W. Fleming, Cavalier, for defendant and appellee.

GIERKE, Justice.

This is an appeal by the State from an order entered in the District Court of Walsh County granting the defendant, David Oasheim, a new trial. Oasheim had been found guilty by a jury of the crime of gross sexual imposition. We affirm.

Oasheim and his co-defendant, Rick Kringstad, were charged with having forcibly compelled the victim to submit to an act of sexual intercourse in violation of § 12.1–20–03 of the North Dakota Century Code.[1] The criminal complaint alleged that the crime took place between twelve o'clock midnight and twelve-thirty a.m. on July 9, 1983, in Hoople, North Dakota. The only direct evidence linking either defendant to the crime was the testimony of the victim. Both defendants presented.an alibi defense.

The cases were tried together to a 12-member jury. Following four days of testimony, the defendants presented motions for entry of judgment of acquittal pursuant

to Rule 29(a), N.D.R.Crim.P. The motions were denied and the cases were submitted to the jury which returned verdicts of guilty as to both defendants. The defendants then presented motions for a new trial. Rule 33, N.D.R.Crim.P. The trial judge denied Kringstad's motion but granted Oasheim's motion. The State appeals from the order granting Oasheim a new trial. This appeal is specifically authorized by § 29–28–07(2), N.D.C.C.

On the evening of July 8, 1983, the complainant and her husband went to the American Legion Club in Hoople. The defendant, Kringstad, was also present at the Club. At approximately midnight the complainant told her husband she did not feel well and wanted to leave. Her husband asked her to wait a few minutes and she responded that she would wait for him in the car.

The complainant testified that when she left the Club, she noticed Oasheim leaning against the outside of the building. She then proceeded to her car where, after approximately five minutes, she was approached by Oasheim and Kringstad and informed that her husband had asked them to escort her home. When she refused to leave with them, the two men pulled her from the car and Oasheim carried her behind a nearby building. According to the complainant, she was then held by Oasheim and one or two other persons she could not identify while Kringstad had intercourse with her.

The alleged crime took place between twelve o'clock midnight and twelve-thirty a.m. Oasheim's alibi defense was based on his own testimony and that of several other witnesses. According to Oasheim's version of the events of that evening, he was visiting in the home of Rick Kringstad until about eleven p.m. He then returned home and watched television with his mother until approximately midnight. Shortly before midnight he went upstairs to his bedroom. Oasheim's sister, Anita, testified that she spoke with the defendant in his room at

---

**1.** *See State v. Kringstad*, 353 N.W.2d 302 (N.D. 1984).

approximately midnight. Anita then left the Oasheim home and went to visit a friend, Shelly, who was babysitting in a trailer home located approximately 100 feet from the rear door of the Oasheim home. Anita further testified that at approximately twelve-thirty a.m. she called home and the phone was answered by the defendant. She asked him to come down and unlock the rear door of the house so she could bring her bicycle inside. Shelly Hanson testified that she saw David Oasheim at the rear door to his house at twelve-thirty a.m.

Although none of Oasheim's witnesses could testify that they actually saw Oasheim at any time between twelve o'clock midnight and twelve-thirty a.m., they did testify that it would have been impossible for Oasheim to leave his room, descend the stairway, and leave the house without being noticed. The members of the Oasheim family testified that the Oasheim home had only one set of very creaky stairs. The staircase is located adjacent to the living room in which Mrs. Oasheim was watching television. She testified that it would have been impossible for the defendant to descend that staircase without being noticed.

In addition to the foregoing testimony there were no witnesses presented by the State, except the complainant, who could place Oasheim in the vicinity of the American Legion Club at any time during the evening. The complainant did testify that she saw Oasheim leaning against the outside of the building when she left at approximately midnight. Others who were in the vicinity at that time, however, testified that they did not see him.

The State has raised two issues on appeal:

1. Whether the trial court erred as a matter of law in granting Oasheim's motion for a new trial based on insufficiency of the evidence.

2. Whether or not the trial court abused its discretion by granting a new trial on the ground that the jury's verdict was contrary to the weight of the evidence.

▮▮▮ The issues raised on appeal are attributable, in large part, to the trial court's failure to distinguish between a verdict based on insufficient evidence and a verdict which is contrary to the weight of the evidence. *See generally Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *State v. Kringstad,* 353 N.W.2d 302 (N.D.1984); A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Kringstad, supra; State v. Jenkins,* 326 N.W.2d 67 (N.D.1982); *State v. Olson,* 290 N.W.2d 664 (N.D.1980). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial in such a case. *Tibbs v. Florida, supra; State v. Kringstad, supra.*

▮▮▮ A trial court may, however, grant a new trial if it determines that the verdict, although supported by legally sufficient evidence, is against the great weight of the evidence. In so doing, the trial judge may, within limits, weigh the evidence and evaluate for himself the credibility of the witnesses. *United States v. Lincoln,* 630 F.2d 1313 (8th Cir.1980); *State v. Kringstad, supra.*

▮▮▮ A motion for a new trial on the ground that the verdict is against the weight of the evidence is a matter resting within the sound discretion of the trial court. The trial court's decision will not be set aside unless an abuse of discretion is shown. *State v. Sheldon,* 301 N.W.2d 604, 615–616 (N.D.1980), *cert. denied* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204. This court has repeatedly held that a stronger showing of abuse is required to reverse an order granting a new trial than to reverse an order denying a motion for a new trial. *Cook v. Stenslie,* 251 N.W.2d 393, 396 (N.D.1977).

The standard to be applied in determining whether or not the trial court has abused its discretion in granting a new trial was enunciated by this court in *Kohlman v. Hyland,* 56 N.D. 772, 219 N.W. 228, 230–231 (1928):

"The discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. *State v. Stepp,* 48 N.D. 566, 185 N.W. 812; *State v. Weber,* 49 N.D. 325, 191 N.W. 610; *Kansas P. Ry. Co. v. Kunkel,* 17 Kan. 145. 'We do not mean,' says Justice Brewer in the Kansas case, *supra,* at page 172, 'that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury.' "

*See Cook v. Stenslie, supra* 251 N.W.2d at 396.

The State argues that the trial court awarded a new trial on the ground that the evidence was legally insufficient and that the trial court erred as a matter of law in reaching that conclusion. In support of its argument the State points to the trial court's discussion, in its memorandum opinion, of the "noncorroboration" rule.

■ It is beyond dispute that this State does not require corroboration of a rape victim's testimony to sustain a conviction. *State v. Kringstad,* Crim. No. 976, 353 N.W.2d 302 (N.D.1984); *State v. McLain,* 312 N.W.2d 343 (N.D.1981); *State v. Olmstead,* 246 N.W.2d 888 (N.D.1976), *cert. denied* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978); *State v. Klein,* 200 N.W.2d 288 (N.D.1972); *State v. Alfstad,* 98 N.W.2d 371 (N.D.1959); *State v. Holte,* 87 N.W.2d 47 (N.D.1957); *State v. Johnson,* 58 N.D. 832, 227 N.W. 560 (1929). The victim's testimony is sufficient to sustain Oasheim's conviction against any claim that the jury's verdict is based on legally insufficient evidence. The trial judge acknowledged that "the question of corroboration, as to rape, has been ruled upon in North Dakota". He went on, however, to say that "there should be at least a modicum of incrimination to fulfill the requirements of proof. Saying that the victim's statement needs no corroboration is different than saying a conviction may rest solely upon such statements with an absence of other evidence". It is the State's position that these statements are inherently contradictory and that the trial court based its decision on an error of law, thus rendering the decision freely reviewable.

■ We agree with the State that the memorandum of opinion is confusing in respect to its discussion of corroboration and evidentiary sufficiency. When considered within the context of the entire opinion, the evidence presented at trial, and the proceedings which had gone before, we nevertheless conclude that the trial court grounded its decision to grant a new trial on its belief that the verdict, although supported by legally sufficient evidence, was against the manifest weight of the evidence. We reach this conclusion for the following reasons:

First, the trial court denied Oasheim's motion for entry of judgment of acquittal. If the trial judge believed that the evidence presented at trial, when viewed in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn therefrom, was insufficient to enable a rational factfinder to find the defendant guilty beyond

a reasonable doubt, it was his duty to grant that motion.

 Second, the trial judge recognized that the only motion available to the defendant following the return of a guilty verdict was a motion for a new trial. The Double Jeopardy Clause, however, prohibits retrial if the evidence presented at the first trial is legally insufficient to support a guilty verdict, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), but a new trial may be granted on the ground that the verdict was against the weight of the evidence. *Tibbs v. Florida, supra.*

Third, language in the memorandum opinion supports this conclusion;

"If I reach a conclusion that a verdict is contrary to the weight of the evidence and a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. *State v. Holy Bull*, 238 N.W.2d 52. *Also see*, State v. Flamm (N.D. 1983) 338 N.W.2d 826, 828, on sufficiency of evidence. I do reach that conclusion and therefore the verdict as to Defendant Oasheim is *set aside* and a *New Trial is ordered*." [Emphasis in original.]

Finally, the concerns expressed by the trial court in its memorandum opinion in support of the order granting Oasheim a new trial support our conclusion. The opinion states that:

"The victim ... has identified him as being there and assisting Kringstad in performing the actual sexual intercourse. There is no testimony of anyone seeing Oasheim in the area of the crime scene in downtown Hoople and he was not at the dance where all the other principals were in attendance. Five witnesses and Oasheim himself testified he was at home during the pertinent time and there was *no evidence* to contradict this except, of course, that of the victim.

· · · · ·

"... The testimony of the victim is inconsistent with the testimony of any number of witnesses who say that Oasheim was not at the scene. Of course, it is physically possible that Oasheim was not at home or could have left his home at the relevant time but there is no evidence to support such a conclusion. It is strongly exculpatory that, of the numerous eye-witnesses at the dance scene, none saw Oasheim."

It is obvious from this quoted language that the court concluded that in its judgment the jury's verdict was contrary to the manifest weight of the evidence. Although, on the cold record before us, we might reach a different conclusion we cannot say that the evidence is so nearly balanced that an award of a new trial was an abuse of judicial discretion.

The State suggests that retrial in this case would be futile because subsequent conviction resting upon the same evidence would also be against the weight of the evidence. This assumes that the same standard of review applies to successive convictions. In *Blocker v. State*, 92 Fla. 878, 893, 110 So. 547, 552 (1926) (*en banc*), the Florida Supreme Court stated that:

"There is in this state no limits to the number of new trials that may be granted in any case .... It takes a strong case to require an appellate court to grant a new trial upon the ground of insufficiency of conflicting evidence to support a verdict when the finding has been made by two juries."

In *United States v. Weinstein*, 452 F.2d 704, 714 n. 14 (2d Cir.1971), *cert. denied* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), the Court stated that:

"We do not join in the ... forecast that the granting of a new trial would doom the defendant and the government to an infinite regression .... If a third jury were to find [the defendant] guilty, we should suppose any judge would hesitate a long time before concluding that the interests of justice required still another trial."

*See Tibbs v. Florida, supra* 457 U.S. at 43, n. 18, 102 S.Ct. at 2219, n. 18.

For the reasons stated in the opinion, the order of the district court granting the

defendant's motion for a new trial is affirmed.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

SAND, Justice, concurring with limited reservations.

I concur in the result. This state has traditionally, and rightfully so, followed the rule of law that in a rape case the victim's testimony need not be corroborated to sustain a conviction. The very nature of the crime is such that, generally, only the participating parties are present without witnesses. The pool table rape case recently in the news is an exception.

I am concerned that if the victim's testimony is required to be corroborated, the victim may even refuse or avoid talking about the case or file a complaint if this requirement is to become the rule of law.

The testimony of Oasheim's sister and a friend placed the defendant at his room at home around 12:30 a.m. The precise time of the alleged crime was not established but was to have occurred at midnight. This then placed the trial court in a difficult position of believing one party or the other. I have reservations that our rule of law contemplates that this kind of weighing is permitted but, if it is permitted, then shouldn't the interests and relationship of the witnesses also be considered? Some, or limited, weighing is permissible.

The trial court, in its memorandum opinion, relied upon *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975), as justification for granting a new trial on insufficient evidence. I authored that opinion and I must say that the United States Supreme Court since then has ruled in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that insufficient evidence is not a valid basis for a new trial and, if granted on such conditions, would constitute double jeopardy in violation of the Constitution.

I also have reservations in giving *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), a broad application. In *Tibbs*, the United States Supreme Court reviewed the decision of the Florida court in which a death penalty was imposed and the Florida court was obligated by statute to review the evidence to determine if the interests of justice require a new trial, whether sufficiency of the evidence is a ground of appeal or not. Our Supreme Court, at one time, heard appeals de novo on the record but, with the repeal of the statutory authority, such review is no longer the situation. I am not aware of any statute or rule of law which grants the trial court the authority to weigh the credibility of witnesses in a jury case and disagree with the jury. In effect, the judge would be substituting his judgment for that of the jury. In my opinion the *Tibbs* case has limited application to those issues where the appellate court or trial court is obligated to review the evidence, such as was the case in Florida. Furthermore, the United States Supreme Court was in a real bind. It was either required to rule as it did or allow a killer to go free. Such decisions do not make good law.

Under Rule 33, NDRCrimP, the court may grant a new trial to the defendant if required in the interest of justice. Our case law is abundant with the legal principle that a motion for a new trial is committed to the sound discretion of the trial court. I cannot say that the interests of justice may not be served, or were not served, by granting a new trial and, thus, the trial judge has not abused his discretion, but I cannot agree that a judge can sit as a juror in a jury trial.

In this instance both defendants were tried together. Conceivably, if separate trials were held, the jury might have reached different verdicts. The jury might have been confused as to what evidence applies to which defendant. In my opinion this constitutes a basis for granting a new trial. I am not suggesting that joint or common trials are to be avoided or are a basis for a new trial. The circumstances and facts of each case will determine what action is proper. However, in this instance, it is conceivable that the jury inadvertently

misapplied the same facts (some of which were negative as to one but not to the other) to both defendants. This, in my opinion, constituted a basis for a new trial.