L. S. BLOCKER, *Plaintiff in Error* v. THE STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion Filed November 12, 1926.

1. Objections to testimony in the trial of cases, if not apparent, must be made apparent by the record in order to justify a reversal of a judgment of a trial court upon an assignment of error for the admission of evidence over objection.

2. Evidence tending to show the insanity of the defendant in a criminal case, makes material and relevant evidence tending to establish his sanity when offered by the State in rebuttal.

3. It is not necessary to the admission of evidence about the examination of a defendant in a criminal case for the purpose of ascertaining his sanity or insanity, to show the presence of his counsel or notice to him. Such an examination ought not to be surreptitious or clandestine, but must be fairly and impartially made.

4. An examination of a defendant to ascertain his mental condition is not a deprivation of his constitutional rights, nor does such an examination require him to give evidence against himself.

5. It is the privilege of a litigant to have an alienist who has made an examination as to his sanity of a certain person to have him express his opinion on such question without first disclosing the extent or course of such examination. And it is the privilege of the other side to cross-examine him.

6. A non-expert witness may express his opinion as to the sanity of another only after stating the facts on which his opinion is based.

7. It is not required that a court caution a jury as to the value of expert testimony or as to the value of the opinion of an expert on insanity when given in answer to a hypothetical question, but when it is given and its tendency was favorable to the defendant in the case at bar, it is not harmful error.

8. It is a correct principle of law that where, in a criminal case, the defense is that of insanity, and the evidence raises and maintains in the minds of the jury a reasonable doubt as to his sanity he should be acquitted.

9. The evidence in the case at bar examined and adjudged to be sufficient to sustain the verdict.

10. The second finding of a jury on a question of fact is more persuasive than a first verdict.

11. The rule in McNaughton's case again approved by this court.

A Writ of Error to the Circuit Court for Dade County; H. F. Atkinson, Judge.

Judgment affirmed.

*Bert A. Riley* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

HORNE, Circuit Judge.—The plaintiff in error was indicted for murder in the first degree by a grand jury of Dade County, Florida, was tried and convicted of murder in the first degree, with a recommendation to mercy. This conviction was not allowed to stand in this court because of errors of law in charging the jury as to defense of insanity. Blocker v. State, 87 Fla. 128, 99 South. Rep. 250. The defense of insanity was vouched for by this court as having been made in good faith. There was another trial of the plaintiff in error for murder in the first degree, as a result of which the defendant, in the court below, and hereinafter called the ''defendant,'' was convicted of murder in the second degree, and from the judgment of the Circuit Court imposing the minimum penalty this appellate proceeding was instituted.

The homicide in question was committed by the defendant in anger, without mitigating circumstances, deliberately and because of a real or an imaginary wrong of the deceased, at, towards and against the defendant. A finding that the defendant was guilty of murder in the first degree would have been upheld by the courts upon the State's evidence in chief. The defendant relied upon the defense of insanity in both trials, calling to his aid as witnesses men of prominence, courage and integrity. Two of them ex-Circuit Judges, many of them members of the bar, court officials, business associates and acquaintances, with members of his own family—and from this evidence the jury could have found that the defendant was not guilty because of insanity. The jury likely concluded that there was something wrong with him at the time of the homicide, else the conviction would have been of the higher offense. The State's rebuttal consisted of the testimony of two ex-

pert witnesses—and the jailer having the custody of the defendant since the commission of the homicide. One of these expert witnesses examined the defendant on two occasions and the other one three occasions. The writer sat in this court in this case and appreciated the able argument of counsel for defendant, and has been requested to prepare this opinion.

The case is here and now before the court with the assertion that there was error in the court below in three main particulars:

I. "The main assignments of error are based upon the court's ruling in allowing the testimony of the alienist to go before the jury without first compelling such alienists to detail the conversation and course of their examination of the defendant separate and apart from the jury." "As well an attack upon their testimony because the answers to hypothetical questions were not based upon a hypothesis established by testimony heard by the jury, but upon a combination of testimony heard in the presence of the jury and obtained by a separate examination in the county jail."

II. "An important assignment of error attacks the court's charges on the defense of insanity."

III. "The defendant contends that the evidence is not sufficient upon which to base a verdict and judgment of murder in the second degree."

1. The record discloses that Dr. Smith was called, qualified as an expert and testified, among other things, that he examined the defendant in March, 1923, and again on the day before he gave testimony, and was asked "what condition did he find the defendant in mentally?" This was objected to because irrelevant and immaterial, and further that when defendant was examined in 1923, the defendant's counsel was not present because counsel was

not invited to be present at an examination (by a physician employed by the State in the absence of his counsel, is a deprivation of the defendant's constitutional rights) and because there was no sufficient predicate laid for the testimony.

These objections to my mind may be disposed of by saying that the evidence sought is relevant to the issue tendered by the defendant. There is no rule of law requiring the presence of, or an invitation to, a defendant's attorney to be present on such an occasion, nor is there any basis in fact of record to support the objections on the point or that the alienist was employed by the State, but a discussion of the general question involved will it seems to me dispose of that part of the case.

It is the duty of the parties to a case to prove facts in issue and it is the duty of courts to admit evidence thus. presented. The issue of insanity was tendered to the State by the defendant's evidence on his first trial. It is apparent that he had full opportunity to cross-examine the alienists, and he did so. There is nothing to indicate anything but a painstaking examination of the accused by the alienists and from this examination under the law it was the privilege of the parties to have such experts express their opinion as to the sanity of the defendant, and this without first detailing the circumstances or the course of such examination. The opinion of an expert witness as to the sanity of a person may under the law be given, subject to such cross-examination as is proper. Underhill on Criminal Evidence (3rd ed.), Section 266, is authority for the statement here made: "The opinion of the non-expert must be confined to the facts first stated by him. The opinion of the medical expert on insanity may be given without first stating what facts were found by him upon which he bases his opinion, but if such facts are called for,

the jury is entitled to have them. Where the expert has made a physical examination he may be required to describe the facts and symptoms observed, as well as the conversation which he had with the defendant.''

In the case at bar the defendant was examined by two expert witnesses who testified that the defendant was not insane; they testified in answer to a hypothetical question made satisfactory to the defendant's counsel by his adenda that in their opinion he was sane—this is permissible by the rules of evidence.

The defendant's counsel cite several cases which have been examined.

In the case of State v. Newcomb, 220 Mo. 54, 119 S. W. Rep. 406, defendant was indicted for rape, tried one term of court and a mistrial resulted; tried again, found guilty and sentenced to thirty years. A Dr. Crow was permitted to testify, over the objection of defense, as to statements made by defendant and as to defendant's condition while he was examining defendant under an order of the justice, pending the preliminary trial of another man for this same offense. The court said: ''It is idle to talk of his voluntarily consenting to this violation of his person. As we read the record he had no option in the matter. It seems that defendant, under an order of court, was taken into a room of the court house, and in the presence of the sheriff was examined by Dr. Crow, both of whom testified in this case as to the result of that examination, and as to what they saw during that examination, and what they said to him. Counsel for defendant maintained this was 'flagrant error' and was 'a conspicuous violation of the constitutional right of the defendant to be exempt from testifying against himself.' '' The court said: ''Some effort was made to show that defendant voluntarily consented to this violation of his person, but we think it is

apparent that he simply submitted because he thought he was compelled to do so. When it is considered that he was at the time in custody for this very crime; that the prosecuting attorney demanded an order from the justice for this examination, that the sheriff took him into a private room for the purpose of the examination, it is not strange that the defendant thought that he was compelled to submit.'' It was wrong and unlawful.

In the case of State v. Height, 117 Iowa 65, 91 N. W. Rep. 935, the defendant was charged with rape. The State sought to introduce evidence as to the previous physical condition of the defendant when examined by physician while confined in jail, to show that he had a disease which had been communicated to the female. The defendant contended that the physical examination was made without his consent and that the testimony should have been excluded because it was not voluntary, because it related to a confession, but the court held that it appeared without reasonable doubt that the defendant was compelled to submit to such examination and was therefore compelled to furnish evidence against himself. The examination by the physician was made under the direction of the prosecuting attorney, and was at first resisted by the defendant, who finally consented thereto, if at all, only after he had been told by one of the officers who made the arrest, and who was present, acting under the direction of the court attorney, and in his presence, that the State had the right to require such examination to be made, and that the defendant must submit to it. In Iowa there is no constitutional provision to the effect that the defendant in a criminal prosecution shall not be compelled to be a witness against himself, as stated in the opinion, but the court nevertheless held that such examination was improper and that the testimony elicited from such examination was in-

admissible.  In this case the court cites United States District Court cases, gives a history of the 'Ancient inquisitorial and manifestly unjust method of interrogating accused persons,' which has long prevailed in the continental system, and until the expulsion of the Stuarts from the British throne, in 1688, and the erection of additional barriers for the protection of the people against the exercise of arbitrary power, was not uncommon even in England.''

The court in this case reviews all the decisions on this constitutional question and comes to the conclusion as follows:  ''Without further elaboration or the multiplication of authorities it is enough to say that the officers acted unlawfully in compelling defendant to submit to this examination, and all evidence with reference to information secured thereby should have been excluded on defendant's objection.''

In the case of People v. Nino, 149 N. Y. 317, 43 N E. Rep. 853.  In this case defendant was convicted of killing his wife; sentenced to death.  A physician who was an expert on insanity was sworn as a witness for the defense. This physician had made an independent examination of the defendant while he was confined in the Tombs in order to determine the question of his sanity.  He later made a joint examination with another physician, having in view the same object.  The testimony of the doctors' conversation was not allowed in evidence, and the court said: ''This is a case where it was asserted that the defendant had been continuously insane for a period of four months before the killing up to the time of the trial.  The examination of the expert was directed to his mental condition at the time they saw him, and from the conclusion they then reached, and the medical and other facts proven, they would be competent to give, on the trial, an opinion as to his sanity or insanity at the time of the homicide.  The jury are entitled

to the facts on which an insanity expert based his opinion, and when those facts are the result of his own interviews with the defendant, it is not only competent, but necessary, that they should be laid before the jury.

In a Massachusetts case the court says: ''Juries are to judge of facts; and, although the opinions of professional gentlemen on facts submitted to them have justly great weight attached to them, yet they are not to be received as evidence unless predicated upon facts testified either by them or others.'' Dickinson v. Barper, 9 Mass. 225.

The jury are entitled to all the facts on which the expert bases his opinion. If he answers a hypothetical question, the facts therein set forth must have been proven on the trial. If he rests his answer on facts and knowledge he has acquired himself, he must impart them to the jury if asked to do so.

The following are a few of the cases bearing on the general question, cited by counsel: People v. Wood, 126 N. Y. 249, 27 N. E. Rep. 362; People v. Hawkins, 109 N. Y. 408, 17 N. E. Rep. 371; People v. Taylor, 138 N. Y. 404, 34 N. E. Rep. 275; Insurance Co. v. Cotheal, 7 Wend. (N. Y.) 72, 78.

In the case of People v. Wood, 126 N. Y. 249, 27 N. E. Rep. 362, the court refused to allow the wife of the defendant to testify as to his mental attitude about a week prior to the killing when she informed him that she had been criminally assaulted, inasmuch as this action at that time bore upon the question of his mental status. The court held that such testimony should be admissible. It seems at the trial a reference to the conversation was included in the hypothetical question, but the court held that even this inclusion did not cure the error of the exclusion of the testimony, and this case was reversed because the defendant was not allowed to put in evidence facts of the nature that was testified about in the case at bar.

People v. Furlong, 187 N. Y. 198, 79 N. E. Rep. 978. A murder case. Defense insanity. The examination was made by Dr. Flint, who heard that the court desired it. He told defendant during the examination that he thought it best to answer questions unreservedly and truthfully; that he might decline to answer any question. Neither side was represented by counsel at the examination. After detailing the physical examination and the conversation the defendant had with him, he testified "neither in the account he gave of himself or his history, nor in his appearance, nor as the result of my physical examination was there any evidence that he was an epileptic." There was no exception to this testimony.

State v. Simonis, 39 Ore. 111, 65 Pac. Rep. 595. This was a poisoning case and I do not find that the case helps settle any question now before the court.

State v. Miller, 71 N. J. L. 527, 60 Alt. Rep. 202. A murder case. The defendant was observed by the jailer to have a superficial wound upon his hand or hands, was taken to another part of the jail by the jailer, and divested of his clothes, and thereupon he made an examination of his person with the result that he found a wound on the back of each hand and described them. "But none of the objections against the admission of testimony of an accused, extorted by compulsion can reasonably be applied to evidence elicited from witnesses who have observed the accused and merely testify to the results of their observation. It is a fair inference, from the testimony in this case, that the wounds on the back of the hands of plaintiff in error could have been observed by the physician without removing the clothing. Evidence of the results of such observation is not prohibited, either by the language of the constitutional clause appealed to or by the common law. It is not evidence which the accused has given or has been compelled to give. In respect to such observations, the accused is not

made a witness against himself. That was all the evidence which was in fact produced, and we do not think it can be rendered incompetent because the witness who testified had, in his anxiety to make further observations, compelled the accused to submit to be divested of his clothing and examined for other wounds.

"Nor do we desire to be understood as conceding that if the physician had rendered himself liable to an action for damages for illegally removing the clothing of a prisoner, and thereby enabling him to observe a wound on the person which had been concealed, that the testimony of his observation would have been inadmissible. If the wound were upon the face or hand, or a part of his person exposed to common view, it would be absurd to say that testimony of what the wound presented to common observation was compelling a person on whom the wound was to be a witness against himself. I think it equally absurd to say that the testimony of the observation of a wound in any part of the body, although obtained by a forcible removal of what concealed it, is to be rejected as produced by compelling a person to be a witness against himself. There are cases which carry the protection of the accused under such constitutional restrictions to an extent which seems unwarranted. The whole subject is discussed in the prevailing opinion in the case of State v. Ah Chuey, 114 Nev. 79, in which the action of the trial judge in compelling a defendant, on a trial on an indictment, to expose his arm and admitted evidence in respect to certain tattooed marks thereon, was under review.

"But in this case there is nothing whatever to indicate that plaintiff in error objected to the removal of his clothing and the examination of his person. So far as appears, it was entirely voluntarily on his part."

Flanagan v. State, 106 Ga. 109, 32 S. E. Rep. 80. Murder case. Insanity for a defense. It was in a trial for mur-

der in which the sole defense was that the accused was insane at the time of the homicide. It was held improper and illegal to allow the foregoing question to be propounded an expert witness, the answer thereto being in the negative: ''State whether in your opinion from your examination of the accused, from all that you know of him, have observed of him or heard of him, he was laboring at the time this crime was committed under any overmastering delusion.'' This question the witness was allowed to answer, over the objections of the defendant's counsel, the objections made to the question being that it was 'not a proper question for the witness to form an opinion on,' and was 'not a proper hypothetical question.' To this ruling exception was taken. An expert on insanity, as was the witness of whose evidence complaint is here made, may give an option based upon his own examination of a person, upon his observation of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true. The judge should be informed whether he bases his opinion on his own knowledge or upon a hypothetical state of facts, and should know what portion of the evidence he has assumed to be true in forming his opinion. In the present case the witness gave an opinion which may have been based, in whole or in part, *upon what he had heard* of the defendant; and we think it should have been received.''

State v. Petty, 32 Nev. 384, 108 Pac. Rep. 934. This was a murder case; the defense was insanity. The defendant had been examined by his physician and testified himself as to his insanity. The trial court upon motion of the State and over the objection of the defendant appointed, and during the taking of evidence in rebuttal, and not for the purpose it is said of rebutting any statement of the defendant, three physicians for the purpose of making this

examination. The examination was made by them at a suitable time and place in the presence of attorneys for the State and the defendant; each of these physicians so appointed by the court subsequently and over the objection of the defendant testified to the facts disclosed by their examination of the person of the defendant within the limits of the order of the court. Exceptions were taken to the order directing the examination and to the testimony of the appointed physicians based upon the contention that his constitutional guaranty about being compelled to be a witness against himself was being violated. It was held that the court did not err in making the order or in the admission of the testimony. There is nothing of record showing a violation of the constitutional rights of the defendant.

II. Objection is made to charge 15 given by the court, as follows: "The court has admitted in evidence the testimony of expert witnesses in answer to hypothetical question. The value of such testimony depends upon whether the facts stated in the hypothetical questions are the same and coincide with the facts established by the testimony and other evidence in the case. Such testimony is to be by you taken and considered together with all the evidence in the case in making your verdict."

This charge could have been refused with propriety. It does not add to or take from the more general statements of the duty of the jury—it is more precautionary than otherwise. Its tendency is to warn the jury to be very careful in considering the evidence as detrimental to the defendant, and it makes it easy for the jury to reject and not consider the answer of the witnesses to the hypothetical question.

The expert witnesses testified to examination of the defendant on different occasions, and from these examina-

tions they testified that in their opinion the defendant was sane. They further testified that an examination such as they made did not disclose any indication of the defendant having been insane a few months previous to their first examination. They were each examined in chief and upon cross as to the examination they made, the conclusions they came to and why. They were each asked a hypothetical question, in form satisfactory to everybody and to this they gave an answer unfavorable to the defendant, and this was acted upon by the jury only after close scrutiny.

Other charges to the jury are assigned as error, to-wit:

"16. Sanity being the normal and usual condition of mankind the law presumes that every individual is in that condition, hence the State on a criminal prosecution may rest upon such presumption without further proof thereto. The fact of sanity is presumed to exist *prima facie* and whoever denies such fact or interposes a defense based upon its untruth must prove it. The burden of overcoming the presumption of sanity is upon the person who alleges insanity.

"17. Where the defense of insanity is relied upon the rule in force in the United States is that if the evidence introduced tends to rebut the presumption of sanity, on the part of the accused, and the jury entertains a reasonable doubt after due consideration of all the evidence, as to the sanity of the accused, it is their duty to acquit. In other words, if the evidence introduced by the State, in a criminal prosecution, does not of itself raise a reasonable doubt as to the sanity of the accused at the time when the crime was committed, then the law casts the burden upon the defendant of introducing evidence which would raise, or at least tend to raise in the minds of the jury a reasonable doubt as to the sanity of the accused when the offense was committed. If such evidence is so introduced by the

defendant, and a reasonable doubt as to his sanity is thereby raised or engendered, and the State introduces no evidence in rebuttal sufficient to overcome and remove such reasonable doubt so raised by the evidence of the defendant, then it is the duty of the jury to acquit, for the cause of insanity.

"18.   In every criminal prosecution it devolves upon the State to establish beyond a reasonable doubt that the crime charged has been committed by a rational, responsible human being, and no conviction can be had until the jury are satisfied beyond a reasonable doubt that the criminal act has been committed by such a being.   A sane person is a rational, responsible being."

There is no confusion in this matter, nor extra burden upon the defendant. If when the State closes its case there is a reasonable doubt as to the defendant's sanity, and if the case be submitted to a jury, he should be acquitted.   If there is no reasonable doubt as to his sanity when the State rests, to whom may the court look for help to establish the truth but to the parties?   And if the defendant raises a reasonable doubt he should be acquitted.   And so after all the evidence has been taken and after all of it has been given proper consideration, if there be reasonable doubt as to his sanity, he must be acquitted under the law; but where he is so unfortunate as not to have raised or maintained a reasonable doubt, the law is equally plain that a verdict of guilty should be rendered in the case.

III.   The verdict in this case is a second verdict as to the sanity of the accused; each of these verdicts have been concurred in by great *nisi prius* judges, hence it comes to this Court as a verdict that has appealed to twenty-four jurors and two judges who have had opportunities superior to our own for observation, examination and deliberation.

A new trial should not under the law be granted by an appellate court on the ground that the verdict is against the evidence or not supported thereby—when the verdict does not affirmatively appear to be against the weight of the evidence under the law of the case. Anderson v. State, 24 Fla. 139, 3 South. Rep. 884.

There is in this State no limit to the number of new trials that may be granted in any case, but it takes a strong case to require an appellate court to grant a new trial in a case upon the ground of insufficiency of conflicting evidence to support a verdict when the finding has been made by two juries; yet the law would require of an appellate court such action in cases where the verdict is plainly, manifestly, palpably, clearly or decidedly against the evidence, or where the verdict is so strongly against the weight of the evidence as to shock the court's sense of justice or indicate that the last jury at least were influenced by passion, prejudice or other improper motives, or it clearly appear that the last jury misapprehended the facts adduced in evidence by the parties to the case, or that they had an entire misconception of the law of the case.

The defense in this case was insanity, and it was proven, if at all, by non-expert witnesses, the personnel of whom was of the best, and this defense was vouched for by this court as to its good faith.

In the opinion of the writer it was established that the defendant had a real or an imaginary grievance against the deceased and that he was mad about it, and that the homicide in question was the result of such real or delusionary wrong-doing on the part of the deceased in "trying to take the bread and butter out of my children's mouth."

The merits of this grievance is not to be passed upon by this court. If it was real, it is no justification; if it was the delusion of an insane man, as it is contended by counsel that the defendant was insane at the time, then the holding

of this court in the case of Davis v. State, 44 Fla. 32, text 54, 32 South. Rep. 822, ''If a person under an insane delusion as to existing facts commits an offense in consequence thereof, his guilt or innocence depends on the nature of the delusion. If such person labors under partial delusions only, and is not in other respects insane, he must be considered in the same situation as to responsibility as if the facts with respect to which the delusion exists, were real. For example, if under the influence of his delusion he supposes another man to be in the act of taking his life, and he kills that man as he supposes in self-defense, then he would be exempt from punishment. But if his delusion was that the deceased had inflicted a serious injury to his character or property, or to his happiness in any way, and he killed him in revenge for such supposed or real injury, he would be liable to punishment, if he had a mind to enable him to distinguish right from wrong at the time the homicide occurred;'' affirming and adopting the rule laid down in the leading and former case of McNaughten, 10 Clark & F. 200.

This rule as laid down in the McNaughten case is said by this court to be substantially the rule laid down in all English authorities and is supported by the weight of authority in America.

The extreme penalty was not visited upon the defendant in the case at bar, and it is suspected that it was due in some measure to the charity of the jurors, or by the finding that due to his anger engendered, as he thought, by sufficient though not sudden provocation, he was not mentally competent to form or entertain or act upon a premeditated design as defined by the court in its charge, though the finding was made that the defendant by shooting the deceased did an act that was imminently dangerous to a person other than himself and at a time when and under circumstances which showed the defendant to have had a depraved mind

and that he had no regard for the life of the deceased at the time, and this finding was in harmony with the law as given to the jury on the subject of insanity.

The jury properly found that the defendant was criminally responsible for his act on account of or by reason of his having had a delusion as touching the deceased and the bread and butter for his family—and the jury may have properly found that the defendant was conscious that the act was one which he ought not to do. He evidently knew it to have been against the law because of his voluntary surrender to the officers of the law; hence the verdict in this case was not contrary to the evidence.

Affirmed.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.

BUFORD, J., disqualified.

STRUM, J., concurring.—The sole defense interposed by defendant below was insanity.

Certain expert testimony offered in rebuttal in behalf of the State bearing on the question of defendant's sanity, and based in part upon a physical and mental examination of the defendant in the absence of his counsel, was admitted over defendant's objection. This action of the trial court is assigned as error, defendant contending that it in effect compelled him to become a witness against himself in violation of his rights under the Fifth Amendment to the Federal Constitution and Sec. 12 of the Declaration of Rights of the Constitution of Florida.

There is a striking conflict of authority upon the question of the admissibility of testimony as to facts ascertained by means of a mental or physical examination of the

accused made without his consent or over his objection. Many well-reasoned cases are cited in the principal opinion which hold such evidence inadmissible. See also: Wells v. State (Ala.), 101 South. Rep. 624; Perdue v. State (Ala.), 86 South. Rep. 158.

On the other hand, many State courts, as well as the Supreme Court of the United States, hold such evidence admissible. In the respect under consideration, the Fifth Amendment to the Federal Constitution and Sec. 12 of the Declaration of Rights of the Constitution of Florida are identical. Each provides, amongst other things, that "no person shall be * * * compelled in any criminal case to be a witness against himself, * * *". Construing this phase of the Fifth Amendment to the Federal Constitution, the Supreme Court of the United States, in Holt v. U. S., 218 U. S. 245; 54 L. Ed .1021, said:

"Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse (a military coat) belonged to a prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. Moreover, we need not consider how far a court would go in

compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent. Adams v. New York, 192 U. S. 585.''

In Indiana it has also been held that evidence obtained by means of a forcible examination of the defendant's person is admissible, if relevant, without regard to the question whether the Court, at the trial or anterior thereto, could have compelled the defendant to submit to such an examination. See: O'Brien v. State, 25 N. E. Rep. 137; 9 L. R. A. 323. In that case the Court said:

''The question of duress and its effect upon information thereby obtained is not involved, because the facts to which the witness was called to testify did not depend upon a confession made by the appellant (the defendant), nor upon any act of his; the marks and scars upon the body had no relation to the force used to enable the witness to find them. * * * The conclusion can be reached that the offered testimony was within the constitutional prohibition only upon the theory that the witness was the mere mouth-piece, and that the appellant was the real witness, which would be a strained construction of the constitutional prohibition when applied to the offered testimony. * * * To hold that the testimony of the witness was incompetent would compel us in every case involving the identity of a person accused of crime to hold that testimony as to marks and scars hidden under the clothing which he wears is inadmissible if the information of the witness was obtained without the consent of the

accused, no matter under what circumstances or in what manner obtained.''

The view that such testimony is admissible has also been taken by several other courts. See: State v. Cerar, 207 Pac. Rep. 597; State v. Coleman, 123 S. E. Rep. 580, State v. Spangler, 159 Pac. Rep. 810; Hooks v. State, 261 S. W. Rep. 1053; 16 C. J. 568. And see also the notes to State v. Petty, 108 Pac. Rep. 934, as reported in Ann. Cas. Vol. 25, 1912 D. 223.

This Court, in Ex parte Senior, 37 Fla. 1, 33 South. Rep. 992; 32 L. R. A. 133, in construing Sec. 12 of the Declaration of Rights, held that a broad and liberal construction thereof should obtain in furtherance of the right sought to be secured, and to this end no technical limitation should be placed upon the terms employed. In this connection, however, this Court cited with approval the language of the Supreme Court of the United States in Councilman v. Hitchcock, 142 U. S. 547; 35 L. Ed. 1110, wherein it was said:

"The object (of the Fifth Amendment) was to insure that a person should not be compelled *while acting as a witness* in an investigation, to *give testimony* which might tend to show that he himself had committed a crime.'' (Italics supplied).

In construing the prohibition that no person shall be compelled in any criminal case to be a witness against himself, most Courts now seem to take the view that the word "witness'' is used in the sense of "one who gives testimony.'' Taken in this aspect, the constitutional prohibition should receive a broad and liberal construction, but the majority view now is that it does not operate to exclude the testimony of one whose information is based upon a physical and mental examination of the accused

for the purpose of determining the sanity of the latter. See: 2 Wharton Crim. Ev. (10th Ed.) Sec. 937, Et. Seq., Wigmore Evid. Sec. 2265, Et. Seq.

On the whole, it seems that the substantial weight of authority now sanctions the admission of testimony offered by the State concerning the mental condition of the accused, if relevant to the issue, even though the testimony be based wholly or in part upon a mental and physical examination of the accused, without his consent, and in the absence of his counsel, *provided, however,* the extent and nature of the examination be reasonable and lawful under all the circumstances, and some other constitutional right or immunity of the prisoner is not thereby violated, with all of which the examination now under consideration seems to be in accord. See: Sec. 22, Declaration of Rights, Constitution of Florida; State v. Height, 91 N. W. Rep. 935; 57 L. R. A. 437.

I therefore concur in the conclusion reached in the principal opinion.

BROWN, C. J., AND WHITFIELD AND TERRELL, J. J., concur.