16554

STATE v. MYERS

(67 S. E. (2d) 506)

310

*Messrs. Murchison & West and J. Clator Arrants,* of Camden, *for Appellant,*

*Mr. T. P. Taylor, Solicitor,* of Columbia, *for Respondent.*

October 29, 1951.

OXNER, Justice.

An indictment for murder is pending against appellant in the Court of General Sessions for Kershaw County. His counsel, on an *ex parte* application, obtained an order from the Court allowing him to be taken to the Veterans Hospital at Columbia, South Carolina, for a series of tests and examinations to determine his mental condition. Thereafter, on motion of the State and over the objection of counsel for appellant, the Court issued an order committing him to the State Hospital for the Insane at Columbia for a period of thirty days, for the purpose of having the authorities of that institution make an examination as to his sanity. This order, which is the subject of this appeal, was made under the terms of Section 6239 of the Code of 1942, which is as follows: "Any judge of the circuit court is authorized to commit to the state hospital any person charged with the commission of any criminal offense who shall, upon the trial before him, be adjudged insane, or in whom there is a question as to the relation of mental disease to the alleged crime, whether such question is raised by the prosecution or defense, or it appears to the judge from any evidence brought before him or upon his own recognition: provided, that such commitment shall be for a period of thirty days, at the end of which the patient must be re-

turned to the court if found sane, or duly committed by such judge if found insane. * * *"

Appellant contends that the action of the Court in compelling him to undergo an examination at the State Hospital (1) violated the right guaranteed to him under Article 1, Section 17 of the Constitution, of not being compelled to be a witness against himself, and (2) constituted a denial of the constitutional guaranty of due process of law. It is also asserted that the foregoing section of the Code does not authorize an examination prior to the actual trial of the case. These questions will be discussed in the order stated.

The foregoing statute, which has been in force a long number of years, represents quite a forward step in judicial procedure where there is any question as to the responsibility of an accused for a criminal act. It enables the court to secure technical evidence relating to his mental condition from an unprejudiced and reliable source and makes available to both the prosecution and defense expert evidence free from any possible sentiment of loyalty to either side. An examination under this statute is a distinct aid in the administration of justice. Statutes of similar import have been enacted in most of the states as will be seen by a resume thereof set out in Section 563, Wigmore on Evidence, Third Edition. So far as we are advised, this is the first time that any question has been raised in this State as to the validity of the statute under which the compulsory examination of appellant was ordered.

While there are a few early cases to the contrary, it is now almost uniformly held that where insanity is interposed as a defense, the compulsory examination of an accused by experts for the purpose of determining his mental condition and testifying in regard thereto does not violate either the constitutional privilege of the accused of not being compelled to be a witness against himself or the constitutional guaranty of due process of law.

*Hunt v. State*, 248 Ala. 217, 27 So. (2d) 186; *People v. Strong*, 114 Cal. App. 522, 300, P. 84; *Ingles v. People*, 92 Colo. 518, 22 P. (2d) 1109; *Blocker v. State*, 92 Fla. 878, 110 So. 547; *Noelke v. State*, 214 Ind. 427, 15 N. E. (2d) 950; *State v. Genna*, 163 La. 701, 112 So. 655; *Commonwealth v. Millen*, 289 Mass. 441, 194 N. E. 463; *People v. Truck*, 170 N. Y. 203, 63 N. E. 281; *State v. Nelson*, 162 Or. 430, 92 P. (2d) 182; *Commonwealth v. Musto*, 348 Pa. 300, 35 A. (2d) 307; *Jessner v. State*, 202 Wis. 184, 231 N. W. 634, 71 A. L. R. 1005; *State v. Coleman*, 96 W. Va. 544, 123 S. E. 580. Also, see Rule 205, Model Code of Evidence, American Law Institute.

We are in accord with the conclusion reached in the foregoing cases. In the examinatitn to be had at the State Hospital, appellant will not be required to vouch for anything. Nothing will depend upon his testimonial responsibility. The personal characteristics of an accused which are commonly open and observable to all are not of that secret nature which the constitutional privilege against self-incrimination was designed to protect. For instance, a defendant may be required to stand up in court for the purpose of identification. *State v. O'Neal*, 210 S. C. 305, 42 S. E. (2d) 523. It has been held that an officer's testimony was admissible to the effect that he compared defendant's shoe with certain tracks and that it fitted, notwithstanding the fact that defendant was forced to remove her shoe, and that such conduct did not violate defendant's constitutional privilege of immunity from testimonial compulsion. *State v. Griffin*, 129 S. C. 200, 124 S. E. 81, 35 A. L. R. 1227. In *State v. Taylor*, 213 S. C. 330, 49 S. E. (2d) 289, 291, 16 A. L. R. (2d) 1317, we said: "The weight of authority is to the effect that the guaranty against self-incrimination has no application to such physical evidentiary circumstances as may be revealed by an open exhibition of the witness' body or by an ordinary observation of his person."

It must be remembered that the order for the examination of appellant was made only after his counsel had secured the permission of the court to have him examined at the Veterans Hospital, which clearly indicated a provable plea of insanity. It would be an anomaly to say that he may advance such a claim and have himself examined by experts of his own choosing and then invoke the constitutional guaranties now asserted for the purpose of preventing a similar examination by the authorities of the State Hospital.

We are not advised as to the methods used at the State Hospital in examining a person for sanity but may assume that such an examination is made in a manner consistent with the constitutional rights of the accused. We do not undertake now to define the limits of such rights except to say that the authorities of that institution will not be permitted, over the protest of the accused, to reveal any confession made by him in the course of such examination, or any declarations implicating him in the crime charged.

We do not think the foregoing conclusion, as counsel for appellant seem to think, impinges upon our holding in *State v. Taylor, supra.* There the defendant was charged with rape. On the day after the alleged offense was committed, defendant was brought to the county jail and, along with three or four other prisoners, required to stand in line. As the prosecuting witness stood behind them, each prisoner was made to repeat certain words which she had previously stated were used by the person who assaulted her. By this method the prosecuting witness identified the defendant as the rapist. We held that the procedure followed had the effect of compelling the defendant to be a witness against himself in that the claimed identification was based in part at least on his enforced conduct. In that case the defendant was not merely compelled to speak for the purpose of identification but in effect was required to partially re-enact the crime. We do not think this case is apposite. Here

the accused is not required to undergo a mental examination for the purpose of establishing the fact that he committed the crime but solely to determine his mental responsibility at the time the alleged crime was committed. He is only required to submit himself to observation by the medical experts in order that they might pass upon his mental condition.

Appellant also relies on the case of *People v. Dickerson,* 164 Mich. 148, 129 N. W. 199, 200, 33 L. R. A., N. S., 917. The Court there did not have under consideration the precise question before us. In that case the Court held unconstitutional a section of a statute which provided that in homicide cases, on issues of expert knowledge, "the court shall appoint one or more suitable disinterested persons, not exceeding three, to investigate such issues and testify at the trial", but permitted the parties to use other expert witnesses chosen by them. The conclusion of the Court was based largely upon the ground that "the power of selecting and appointing witnesses * * * is in no sense a judicial act". That decision has been criticised by numerous courts and was subject to the following comment in Wigmore on Evidence, Third Edition, Volume II, page 652: "It is a pity that the Court suffered such a severe attack of dikastophobia on the sight of this harmless statute. As the history and authorities of the present subject are ignored in the opinion, no further notice of its contents is needed; and it would certainly not be followed by the same Court today."

The remaining question raised by appellant is whether or not in criminal cases involving the issue of insanity, the court may under Section 6239 of the 1942 Code commit an accused to the State Hospital prior to the trial of the case. Appellant contends that this can only be done during the trial. There might be more force in this contention under the statute as originally enacted, which read as follows: "Any Judge of the Circuit Court is authorized to send to the State Hospital for the Insane every person

charged with the commission of any criminal offense who shall, upon the trial before him, prove to be *non compos mentis;* and the said Judge is authorized to make all necessary orders to carry into effect this power. * * *". Section 3375, Code of 1912. There was a material amendment in 1920, 31 St. at L. 704, under which the power of a Circuit Judge to send an accused to the hospital for observation as to his mental condition was considerably enlarged. We think the statute as it now stands authorizes an examination before trial and it has been so interpreted by both the Bench and the Bar for a long number of years. The construction advanced by appellant is a narrow one and, if adopted, would result in considerable delay in criminal cases where the defense of insanity is interposed and greatly impede the administration of justice.

All exceptions are overruled and the order appealed from affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.