238 So.2d 817 (1970)
Mary Julia PARKIN, Petitioner,
v.
STATE of Florida, Respondent.
No. 38747.
Supreme Court of Florida.
July 13, 1970.
Rehearing Denied September 21, 1970.
*818 Stallings & Marr and Albert Datz, of Datz & Jacobson, Jacksonville, for petitioner.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for respondent.
ADKINS, Justice.
This case arose in the Circuit Court of Duval County, where petitioner Mary Julia Parkin is charged with first degree murder. The District Court of Appeal, First District, certified the question in this case to be of great public interest, affirming the decision of the trial judge. Parkin v. State, 222 So.2d 457 (Fla.App.1st, 1969). We granted petitioner's petition for writ of certiorari. F.A.R. 4.5(c) (6), 32 F.S.A.
Defendant Parkin was indicted for first degree murder in her husband's death. She served notice to rely on the defense of insanity at the time of the alleged offense. F.Cr.P.R. 1.210(b), 33 F.S.A. The trial court appointed two psychiatrists to examine defendant as to her sanity or insanity at the time of the incidents giving rise to the indictment and provided that the State Attorney and the defendant's attorney both should have the right to be present during examination. F.Cr. P.R. 1.210; Fla. Stat. § 909.17, F.S.A.
At the hearing before the court-appointed experts, the defendant, relying on advice of counsel, refused to answer questions regarding her mental status or medical history. She invoked the constitutional privilege against self-incrimination. Fla. Const., art. I, § 9 (1968), F.S.A.; Fla. Const., Declaration of Rights, § 12 (1885), F.S.A.
The State moved the trial court to compel defendant's cooperation with the psychiatrists, in order that they might formulate opinions as to defendant's mental capacity. The trial court ordered defendant to cooperate with a full psychiatric examination, stating that her own evidence of insanity would be excluded during trial *819 unless she cooperated with the court's experts. Defendant by petition for writ of certiorari secured review by the District Court of Appeal, First District, which affirmed the trial court, holding in essence that the issue of insanity is separate from the issue of guilt, and the defendant by tendering the issue of insanity invited inquiry into her mental condition.
The District Court then certified, as a question of great public interest, the following question to this Court:
Where a defendant in a criminal case serves notice that she will rely upon a defense of insanity and the Court over her objections, orders her to give testimonial responses to court appointed psychiatrists under pain of forfeiting the testimony of her privately engaged psychiatrist, are the defendant's rights to freedom from self incrimination invaded?
The core question of self-incrimination in hearings to determine mental capacity was answered by this Court long ago. In Blocker v. State, 92 Fla. 878, 110 So. 547 (1926), this Court after careful study held without dissent that such an examination does not violate the privilege against self-incrimination. We adopted the view of the State of Nevada, State v. Petty, 32 Nev. 384, 108 P. 934, Ann.Cas. 1912D, 223, where examination under procedures similar to those presently held in Florida were found not to violate constitutional rights.
A related question was presented to us in McVeigh v. State, 73 So.2d 694 (Fla. 1954), when constitutional challenge was made to Fla. Stat. § 917.02, F.S.A., which provides that experts appointed by the Court to examine a defendant's mental capacity
"[S]hall be summoned to testify at the trial and shall be examined by the court and may be examined by counsel for the state and the defendant." (p. 697)
This Court reviewed authority from other jurisdictions and concluded without dissent that the procedures established in Florida contain no violation of fundamental right against compulsory self-incrimination. Compare McCullers v. State, 143 So.2d 909 (Fla.App.1st, 1962) in which the Court held that where opinions are offered in testimony based on discussions by a psychiatrist with third parties, the testimony is vulnerable to objections on the ground of hearsay. This has the effect of limiting expert's examination to interviews of the accused, or in-court listening to testimony offered by third persons. Also compare Land v. State, 156 So.2d 8 (Fla. 1963), in which this Court upheld testimony where the psychiatrist had talked with third parties, but confined his testimony primarily to opinions formed on basis of discussions with and examination of the defendant.
Authorities of other jurisdiction are in accord with the past decision of this Court. In State v. Myers, 220 S.C. 309, 67 S.E.2d 506, 32 A.L.R.2d 430 (1951), a defendant prosecuted for murder was committed to a state hospital for determination of his mental condition. This procedure was authorized by statute but defendant contended that the action of the Court compelled him to be a witness against himself. In rejecting this contention, the Court said:
"While there are a few early cases to the contrary, it is now almost uniformly held that where insanity is interposed as a defense, the compulsory examination of an accused by experts for the purpose of determining his mental condition and testifying in regard thereto does not violate either the constitutional privilege of the accused of not being compelled to be a witness against himself or the constitutional guaranty of due process of law. Hunt v. State, 248 Ala. 217, 27 So.2d 186; People v. Strong, 114 Cal. App. 522, 300 P. 84; Ingles v. People, 92 Colo. 518, 22 P.2d 1109; Blocker v. State, 92 Fla. 878, 110 So. 547; Noelke v. State, 214 Ind. 427, 15 N.E.2d 950; State v. Genna, 163 La. 701, 112 So. 655; Commonwealth v. Millen, 289 Mass. 441, 194 N.E. 463; People v. Truck, 170 N.Y. 203, *820 63 N.E. 281; State v. Nelson, 162 Or. 430, 92 P.2d 182; Commonwealth v. Musto, 348 Pa. 300, 35 A.2d 307; Jessner v. State, 202 Wis. 184, 231 N.W. 634, 71 A.L.R. 1005; State v. Coleman, 96 W. Va. 544, 123 S.E. 580. Also, see Rule 205, Model Code of Evidence, American Law Institute." (p. 432, 67 S.E.2d 506, p. 507)
An annotation on this subject is contained in 32 A.L.R.2d 437. On pages 444-445, the author of the annotation says:
"One of the principal objections advanced against statutes providing for examination of the defendant by experts appointed by the court or designated by statute has been that such an examination results in the accused being obliged to give evidence against himself, as the result of his participation in the examination.
"In the following cases, attacks on the constitutionality of statutes based on the theory of self-incrimination have been rejected."
In support of this statement, authorities are cited from Alabama, Arkansas, California, Colorado, Indiana, Louisiana, Massachusetts, South Carolina and Wisconsin.
The constitutional privilege against self-incrimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt. In the better-reasoned cases it does not extend to the exclusion of evidence of his body or of his mental condition as evidence when such evidence is relevant and material, even when such evidence is obtained by compulsion. State v. Grayson, 239 N.C. 453, 458, 80 S.E.2d 387, 310 (1954). See also State v. Coleman, 96 W. Va. 544, 123 S.E. 580 (1924); State v. Riggle, 76 Wyo. 1, 298 P.2d 349 (1956); State v. Spears, 76 Wyo. 82, 300 P.2d 551 (1956).
There is a differentiation of the issue of insanity from that of guilt-in-fact. The insanity plea and the guilty plea raise separate issue on which different kinds of evidence may be introduced. As a general rule, if evidence is admissible on one issue and inadmissible on another, the Court may allow the evidence to come in. However, the trial judge does possess discretion in excluding evidence admissible on one issue if its probative value on that issue is insufficient to outweigh its prejudicial effect on other issues. McCormick, Evidence, § 59 (1954); Adkins v. Brett, 184 Cal. 252, 193 P. 251 (1920). The Court should prohibit the psychiatrist from testifying directly as to the facts surrounding the crime, where such facts have been elicited from the defendant during the course of a compulsory mental examination.
In other words, the Court and the State should not in their inquiry go beyond eliciting the opinion of the expert as to sanity or insanity, and should not inquire as to information concerning the alleged offense provided by a defendant during his interview; however, if the defendant's counsel opens the inquiry to collateral issues, admissions or guilt, the State's redirect examination properly could inquire within the scope opened by the defense.
This procedure makes available to the psychiatrist such information as he needs to form an opinion as to the ability of the defendant to tell right from wrong, without at the same time opening all information given during such psychiatric examination for use during trial unless it is opened by the defendant. This procedure also places the burden of proving guilt on the prosecution, without opportunity to require a defendant pleading insanity to incriminate himself as to guilt in attempting to establish insanity.
Historically, the protection against self-incrimination is designed to protect against extraction of confessions or evidence by thumbscrews, rack and third degree. The privilege never has required that any Court be deaf to any words a *821 defendant may choose to speak, simply because they may be incriminating. The Constitution does not shield against incrimination by voluntary statements, even if given in pursuit of a collateral issue such as insanity; it does, however, shield against the unfair use of such statements.
A defendant pleading insanity may in the end prove himself guilty while trying to prove himself insane; this is a risk he must take. However, he may not be compelled to prove himself either. Self-incrimination is not directly an issue in cases such as this, simply because the question to be resolved is not guilt or innocence, but the presence or absence of mental illness. Illness, particularly mental illness, although often capable of being proved by extrinsic evidence, is considered more susceptible to proof by evidence based on interviews with the defendant and requiring his cooperation. For this reason, a court before whom an insanity plea is entered is empowered to appoint experts to examine the defendant, and to arrange for examination by these experts. This procedure becomes extremely important in those cases where lay testimony as to the issue of insanity might be unavailable.
It must be borne in mind that an examination into mental capacity must be confined to that issue only. Although it is not a hunting license, a defendant must be required to fully cooperate as to this issue; further, if he makes admissions which are incriminating and he is found not to be insane, such admissions are admissible in testimony to the extent (and only to the extent) that the matters therein are opened during examination by counsel for the defendant. The actuality of illness, having been put in issue by the defendant, must be fully resolved for the protection of the defendant and of society.
Experts appointed by the Court to ascertain mental capacity are neither prosecution nor defense witnesses, but neutral experts working for the Court, and their findings and opinions are subject to testing for truth and reliability by both prosecution and defense counsel. Defense counsel in this case would alter the balance, so as to permit the defendant to prove his case by defense expert testimony, while denying the prosecution access to the defendant to attempt to prove the prosecution's case. It is a cornerstone of a workable system of criminal law that every person is presumed sane, and capable of controlling their actions and being held responsible for these actions. M'Naghten's Case, 10 Clark & F. 200, 8 English Reprint 718 (1843); Hodge v. State, 26 Fla. 11, 7 So. 593 (1890). Obviously, this is only a presumption, and may be overcome. When the presumption of sanity is rebutted, then the State must prove sanity beyond every reasonable doubt, just as it must other elements of the offense. Hodge v. State, supra.
Defense counsel argues that it is unconstitutional compulsory self-incrimination in this case, since the trial judge stated that defendant's evidence of insanity would not be permitted lacking defendant's cooperation with experts appointed by the Court. This precise question has not been previously raised in Florida. However, the defendant having raised the issue of possible insanity, as distinguished from guilt or innocence, must be expected to help resolve it with greatest accuracy. Like the decision to testify in one's behalf and risk incrimination during cross-examination, the decision to plead insanity and tender proof is not a pathway without stones.
In its order, the Circuit Court stated that if the defendant did not cooperate, she would not be allowed to present testimony of privately-employed experts. The District Court, in affirming, stated that she not only would not be allowed to present such evidence but would be barred from testifying in person as to her alleged insanity.
The English or common-law rule of insanity as a defense, contained in M'Naghten's Case, supra, proceeds upon the theory that if a man knows the nature or quality of his act and that it is wrong, he has sufficient *822 mental capacity to be responsible for not properly controlling his action. By Fla. Stat. § 775.01, F.S.A., the common law of England in relation to crimes, except as to the modes and degrees of punishment, is of full force where there is no existing provision by statute on the subject. The M'Naghten rule has been recognized and adopted by the Florida court. Davis v. State, 44 Fla. 32, 32 So. 822 (1902). See 6 F.L.P., Criminal Law, § 30.
In the absence of statute the issue of insanity at the time of the alleged commission of an offense could be tried under a plea of not guilty. A formal plea that a defendant was insane was not necessary. Johnson v. State, 57 Fla. 18, 49 So. 40 (1909).
The Criminal Procedure Act of 1939 included Fla. Stat. § 909.17, F.S.A., setting out the procedure for interposing a plea of not guilty by reason of insanity whereby the defendant is required to give notice of such defense at arraignment or prior thereto. The Criminal Procedure Act of 1939 also included Fla. Stat. § 917.02, F.S.A., authorizing the court to appoint experts to examine the defendant. These statutes are included in the Criminal Procedure Rules as Rule 1.210(b) and (c), Cr.P.R.
The defense of insanity is authorized by the statute adopting the common law and when defendant exercises this right by such a plea he submits himself to the examination prescribed by statute and thereby permits the results of such examination to be presented to the court.
The defense of insanity, like self-defense, theoretically at least, applies only to persons against whom each of the elements of the offense charged could be established. Like self-defense, the defense of insanity, if successfully pleaded, results in an acquittal. Unlike the acquittal of self-defense which means liberty, the acquittal of the insanity defense may mean deprivation of liberty for an indefinite term in a mental institution. Thus the insanity defense is not an absolute defense, but merely a device for triggering possible indeterminate restraint.
When the plea of not guilty by reason of insanity is entered, the defendant must raise a reasonable doubt as to whether he had a sufficient degree of reason to know that he was doing a wrongful act. Brock v. State, 69 So.2d 344 (Fla. 1954).
When the plea of not guilty by reason of insanity was entered, it was done so with knowledge of the existing statutes and case law on the subject. There is no constitutional right to plead this defense, and, if the statutes and case law permit a defendant the privilege of raising it, he must waive certain constitutional rights with respect to it, including the privilege against self-incrimination. The defendant's right at trial to offer evidence on the issue of his sanity at the time of the alleged crime is conditioned upon his cooperation during a psychiatric examination on behalf of the prosecution or court.
Psychiatric examinations are greatly dependent upon testimonial utterances of the person examined. However, any statements obtained from the patient by the doctor are used as evidence of mental condition only, and not as evidence of the factual truth which may be contained in them.
In answer to the question certified to us by the District Court, we hold that, where a defendant in a criminal case serves notice that she will rely upon a defense of insanity and the court over her objections orders her to give testimonial response to court-appointed psychiatrists under pain of forfeiting the testimony of her privately-engaged psychiatrist, the defendant's rights to freedom from self-incrimination are not invaded.
We approve the opinion of the First District Court of Appeal and the writ of certiorari is
Discharged.
*823 ROBERTS, CARLTON and BOYD, JJ., concur.
ERVIN, C.J., concurs specially.
ERVIN, Chief Justice (concurring specially):
Compliance with the trial court's order directing that the defendant cooperate fully with court-appointed psychiatrists in their endeavor to conduct a mental examination of the defendant does not necessarily mean the defendant unconstitutionally incriminates herself in disgorging or revealing testimonial-type information pursuant to the authorized inquiry. Although the mental examination order in this case is not confined to an inquiry of information of a nontestimonial nature [compare Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (blood test); United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (lineup identification); and Howard v. State, 1969, 230 So.2d 1 (voice test)] and although in my opinion compulsion sufficient to invoke the privilege exists here by virtue of the provision in the order requiring Petitioner to cooperate in the examination at the price of forfeiture of the right to pursue evidentiary proof of her insanity defense (see Spevack v. Klein, 1967, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574; Garrity v. New Jersey, 1967, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; also Simkins v. Simkins, Fla. App. 1969, 219 So.2d 724, cert. dismissed 225 So.2d 916), in the final analysis it is the manner in which such compelled disclosures are subsequently utilized that determines the application of the protection afforded by the privilege against self-incrimination. It is the attempted use of the information compelled from the defendant which should function as the fulcrum to measure the scope of the protection afforded by the privilege. So long as the testimonial revelations of the defendant are used solely as the vehicular means by which the psychiatric expert fashions his opinion on the issue of defendant's sanity, there occurs no harmful incriminatory abuse of the information gleaned from the defendant.
Absent interjection of the insanity issue, the prosecution is not in any way handicapped in its effort to prove the element of mens rea necessary to sustain most criminal offenses. In most instances, mens rea can be proved inferentially from the conduct of the defendant. Even in bizarre instances the prosecution can always invoke the aid of the presumption in favor of sanity. However, when the issue of insanity as defined under the M'Naghten rule is raised by a defendant and a reasonable doubt as to the defendant's sanity generated, the prosecution is put to the test, so to speak, in any endeavor to prove sanity and thus mens rea. The presumption of sanity vanishes and the normal inferences of mens rea derivative from the conduct of the defendant are obliterated. The prosecution is forced to meet the issue of insanity head on  meaning it must produce expert opinion evidence on this issue comparable to that available to the defendant. Any competent expert opinion as to the sanity or insanity of a defendant must of course utilize in some respect testimonial responses from the subject. This is simply a characteristic of the analysis of this particular science so far as it is presently understood and advanced. Legal theories, including the workings of organic principles, do not function in a vacuum unattended by realities. Thus, under the exigencies above described, it is not difficult to find sufficient justification and constitutional latitude for the mental examination procedure authorized and sought to be invoked in the present case. But the potential feature of the instant procedure in terms of compromising the privilege against self-incrimination must be carefully limited in order to check untoward results.
The majority opinion laudably recognizes limitations on the use of the testimonial information compelled from a defendant in a mental examination when it states:
"* * * The Court should prohibit the psychiatrist from testifying directly as to *824 the facts surrounding the crime, where such facts have been elicited from the defendant during the course of a compulsory mental examination.
"In other words, the Court and the State should not in their inquiry go beyond eliciting the opinion of the expert as to sanity or insanity, and should not inquire as to information concerning the alleged offense provided by a defendant during his interview; however, if the defendant's counsel opens the inquiry to collateral issues, admissions or guilt, the State's redirect examination properly could inquire within the scope opened by the defense.
"This procedure makes available to the psychiatrist such information as he needs to form an opinion as to the ability of the defendant to tell right from wrong, without at the same time opening all information given during such psychiatric examination for use during trial unless it is opened by the defendant. This procedure also places the burden of proving guilt on the prosecution, without opportunity to require a defendant pleading insanity to incriminate himself as to guilt in attempting to establish insanity." (Emphasis supplied.)
I agree with the above-quoted portion of the majority opinion with the following reservations: Such a rule limiting the use of the testimonial revelations of a defendant should be held to spring directly from the protection afforded by the privilege against self-incrimination and not from vague, uncircumcised and unidentified collateral sources that are not spelled out with some specificity. As thus oriented, contrary to the majority's suggestion, testimonial revelations of the defendant, as opposed to the psychiatric opinion predicated thereon, could not be introduced into evidence even where defendant's counsel opened inquiry into collateral issues. Only in those instances where a defendant takes the stand and waives the privilege himself should the door then be opened for the admission of those testimonial utterances secured from the defendant through the court-ordered examination. Furthermore, by recognizing the constitutional impact of the mental examination procedure here involved, procedures and rules presently exist which properly could be utilized to proscribe and challenge a prosecutor's use of the mental inquiry to lead to tainted or "fruit of the tree" evidence; a situation which is not countenanced in the underlying rationale suggested by the majority for the limitations here imposed.