524 S.E.2d 105

Joseph Paul HUDGINS, Petitioner,

v.

Michael W. MOORE, Director, South Carolina
Department of Corrections, Respondent.

No. 25033.

Supreme Court of South Carolina.

Heard Oct. 19, 1999.

Decided Dec. 6, 1999.

334

David I. Bruck; David P. Voisin; and S.C. Office of Appellate Defense, all of Columbia, for petitioner.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William E. Salter, III, all of Columbia, for respondent.

Lesly A. Bowers, of Columbia; David W. Debruin and Elizabeth E. Appel Blue, both of Jenner & Block, of Washington, D.C.; and James McHugh and Nathalie Gilfoyle, both of Washington, D.C., for amici curiae American Psychological Association and Protection and Advocacy for People with Disabilities, Inc.

MOORE, Justice:

We granted a writ of certiorari to review the denial of post-conviction relief (PCR) in this capital case. We reverse.

## FACTS

Petitioner and his co-defendant, Terry Cheek, stole a truck from the locked lot of an Orkin Pest Control Company. They were driving around in the truck the next evening when they were stopped by Officer Chris Taylor because a hose was dragging from the truck. Cheek, who was driving, did not have his driver's license with him. Officer Taylor asked petitioner and Cheek to get in the back of his patrol car. As

they walked toward the patrol car, Officer Taylor was shot once in the head. Petitioner and Cheek fled on foot. Officer Taylor died on the side of the road.

When they were arrested several days later, petitioner and Cheek each gave a statement indicating petitioner was the triggerman. During the guilt phase of trial, Cheek testified consistently with his statement. Petitioner testified to the contrary that Cheek shot the officer. Petitioner claimed he cared for Cheek "like a brother" and had confessed to the murder only because he was younger than Cheek and thought he would be treated more leniently.[1] He admitted it was his idea to lie to police but testified he changed his mind after learning that Cheek had given a statement against him.

On cross-examination, the solicitor questioned petitioner regarding his responses to a psychological test given during his pre-trial competency examination.[2] The test was the Minnesota Multiphasic Personality Inventory for Adolescents, a true-false test commonly referred to as the MMPI–A. In response to the solicitor's questioning, petitioner admitted he had answered "true" to the following statements on the test:

- I feel it is certainly best to keep my mouth shut when I'm in trouble.
- I do not always tell the truth.
- I have not lived the right kind of life.
- I think most people would lie to get ahead.
- I think nearly everyone would tell a lie to keep out of trouble.

He answered "false" to the following:

- I have often had to take orders from someone who did not know as much as I did.
- I am easily downed in an argument.
- I am certainly lacking in confidence.
- I wish I were not so shy.

---

1. Petitioner was seventeen years old at the time of the murder and Cheek was eighteen.

2. The competency examination was ordered with counsel's consent.

Counsel did not object to the solicitor's cross-examination. Instead, they called in rebuttal Dr. Thrasher, a psychiatrist, who testified that MMPI–A answers are analyzed for patterns and the answer to any single question standing alone has little significance.

After Dr. Thrasher testified on direct regarding the MMPI–A, the State elicited on cross-examination the following testimony:

Q: Have you looked at the diagnosis the defendant received after being diagnosed in Columbia?

A: Conduct disorder, group type.

Q: Do you know what the criteria are for conduct disorder? How do you diagnose conduct disorder? What has to be—

A: You look for a number of criteria.

Q: And does anything in there talk about any kind of psychosis or schizophrenia or anything other things like that?

A: No.

Q: Basically just not obeying rules?

A: Could be truancy, thefts, lying, could be assaults on people, it could be other criminal acts.

Dr. Thrasher then went on to testify that petitioner could also be diagnosed as having "antisocial personality traits" but that conduct disorder most closely fit. He added:

There is more pathology underneath all that than just the conduct disorder. He has a personality structure that is quite worrisome. . . .

The solicitor used petitioner's MMPI–A answers to argue in closing that petitioner lacked credibility. The jury found petitioner guilty of murder and grand larceny. At the sentencing phase, the jury found two aggravating circumstances: murder of a law enforcement officer and murder committed while in the commission of larceny with a deadly weapon. Petitioner was sentenced to death and this Court affirmed. *State v. Hudgins*, 319 S.C. 233, 460 S.E.2d 388 (1995), *cert. denied* 516 U.S. 1096, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996).

Petitioner then brought this PCR action alleging he was prejudiced by counsel's ineffectiveness in failing to object to

the admission of the MMPI–A answers which further resulted in Dr. Thrasher's harmful cross-examination testimony regarding petitioner's character. The PCR judge found there was no basis for objecting to the admission of the MMPI–A answers for impeachment and denied relief.

## ISSUE

Is petitioner entitled to relief because counsel failed to object to the State's use of his MMPI–A answers for impeachment?

## DISCUSSION

### *Failure to object*

 Petitioner contends the MMPI–A answers are inadmissible under state and federal law and that counsel were ineffective in failing to object. While we find no constitutional violation,[3] we agree this evidence is inadmissible under state

---

3. It is well-settled that a voluntary statement obtained in violation of *Miranda* is admissible for impeachment. *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *State v. Brown*, 296 S.C. 191, 371 S.E.2d 523 (1988). Further, although the United States Supreme Court has not specifically addressed whether a voluntary statement obtained in violation of the Sixth Amendment right to counsel may be used for impeachment, the vast majority of state and federal courts to address the issue have held it is. *See United States v. Lott*, 854 F.2d 244 (7th Cir.1988); *United States v. McManaman*, 606 F.2d 919 (10th Cir.1979); *People v. Brown*, 42 Cal.App.4th 461, 49 Cal.Rptr.2d 652 (1996); *People v. Ridley*, 872 P.2d 1377 (Colo.Ct.App.1994); *Martinez v. United States*, 566 A.2d 1049 (D.C.App.1989); *People v. Bacino*, 41 Ill.App.3d 738, 354 N.E.2d 641 (1976); *State v. Thomas*, 698 S.W.2d 942 (Mo.Ct.App.1985); *People v. Ricco*, 56 N.Y.2d 320, 452 N.Y.S.2d 340, 437 N.E.2d 1097 (1982); *Com. v. Batson*, 396 Pa.Super. 513, 578 A.2d 1330 (1990); *State v. Mattatall*, 603 A.2d 1098 (R.I.1992); *State v. Swallow*, 405 N.W.2d 29 (S.D.1987); *State v. Wilder*, 177 W.Va. 435, 352 S.E.2d 723 (1986). Moreover, there is no evidence petitioner's answers to the MMPI–A were coerced or involuntary. *Cf. State v. Victor*, 300 S.C. 220, 387 S.E.2d 248 (1989) (defendant testified on cross-examination that the statement being used to impeach him was coerced by threats from police); *State v. Patton*, 322 S.C. 408, 472 S.E.2d 245 (1996) (to establish entitlement to a suppression hearing, defendant must show there are contested issues of fact regarding admissibility of the evidence in question).

law as set forth in *State v. Myers*, 220 S.C. 309, 67 S.E.2d 506 (1951).

In *Myers*, we considered whether a court-ordered examination to determine the defendant's sanity violated his right against self-incrimination. We found no violation reasoning that the defendant "will not be required to vouch for anything. Nothing will depend upon his testimonial responsibility." 67 S.E.2d at 508. We then stated:

the authorities of [the State Hospital for the Insane] will not be permitted, over the protest of the accused, to reveal any confession made by him in the course of such examination, or any declarations implicating him in the crime charged.

*Id.* The PCR judge found this language in *Myers* did not prohibit admission of the MMPI–A answers as impeachment evidence.[4] We disagree.

In *Myers*, we recognized the need to protect the integrity of a court-ordered mental health examination by forbidding the use of the information obtained for purposes other that ordered by the court. Allowing the use of this information for impeachment of a defendant's credibility at trial would defeat the protection established under *Myers*. *Cf. State v. Thompson*, 329 S.C. 72, 495 S.E.2d 437 (1998) (attorney-client privilege prohibits use of defendant's communications to a mental health expert for impeachment). Accordingly, absent a waiver in this case, we hold counsel were ineffective in failing to object.

### *Prejudice*

In order to prevail on a claim of ineffective assistance of counsel, petitioner must demonstrate that but for counsel's ineffectiveness, there is a reasonable probability the result of the trial would have been different. *Palacio v. State*, 333 S.C. 506, 511 S.E.2d 62 (1999). We find petitioner has met this burden.

---

4. This evidence was not impeaching in the sense of contradicting the substance of petitioner's testimony but was an attempt to impeach his character for truthfulness. *See State v. Robertson*, 26 S.C. 117, 1 S.E. 443 (1887) (by choosing to testify, a defendant puts his character for truthfulness in issue and may be impeached thereon).

First, credibility was a crucial issue at trial since it was essentially petitioner's word against Cheek's. While petitioner's guilt could have been supported on a theory of accomplice liability based on the facts given in his own testimony,[5] *this theory of guilt was never submitted to the jury.* The State specifically declined to request this charge since it insisted petitioner was the triggerman.

Further, not only did the MMPI–A answers include the information that petitioner would lie, which could be harmless in light of the fact that petitioner admitted he lied in his first statement to police, they specifically indicated petitioner would lie *to get out of trouble,* implying his retraction at trial was the lie rather than his original confession.

Finally, and perhaps most damaging, counsel's failure to object to petitioner's impeachment led to Dr. Thrasher's harmful testimony regarding petitioner's pathological nature and propensity to commit criminal acts, evidence that otherwise would have been inadmissible in the guilt phase of trial. *See State v. Peake,* 302 S.C. 378, 396 S.E.2d 362 363 (1990) (character evidence is not admissible to prove the accused possesses a criminal character or propensity to commit the crime with which he is charged).

We hold petitioner is entitled to PCR on the ground counsel failed to object to the use of the MMPI–A answers for impeachment. We need not address petitioner's remaining arguments. The PCR judge's denial of relief is

**REVERSED.**

TOAL, Acting C.J., WALLER, BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.

---

5. Accomplice liability applies to murder that is the natural and probable consequence of the crime to which the defendant was an accomplice. *State v. Bell,* 305 S.C. 11, 406 S.E.2d 165 (1991). Here, petitioner admitted he stole the Orkin truck with Cheek and he knew Cheek had a gun with them in the truck.